## WARD ET AL. v. BOARD OF COUNTY COMMISSIONERS OF LOVE COUNTY, OKLAHOMA.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 224. Submitted March 11, 1920.—Decided April 26, 1920.

The jurisdiction of this court to review a judgment of a state court the effect of which is to deny a federal right, cannot be avoided by placing such judgment on non-federal grounds which are plainly untenable. P. 22.

Certain allotments belonging to Indians in Oklahoma, which by federal right were exempt from taxation, were assessed by county officials, while suits, of which they had full knowledge and in one of which they were defendants, were being litigated in behalf of all such allottees, to maintain the exemption (*Choate* v. *Trapp*, 224 U.

S. 665); and, in response to demands, accompanied by threats of advertisement and sale which were carried out in other cases, the allottees paid the taxes to avoid such sales and the imposition of heavy penalties, but did so under protest denying the validity of the taxation. *Held:* (1) That the payments were clearly made under compulsion, and that no statutory authority was necessary to enable or require the county to refund the money (p. 23). (2) The fact that part of the money, after collection, was paid over by the county to the State and other municipalities, and the absence of a state statute making the county liable for taxes so paid, did not alter the county's obligation to restore the full sums to the allottees. P. 24.

The application of the state statute of limitations, not having been discussed by the state court, is not dealt with here or affected by the decision. P. 25.

68 Oklahoma, —, reversed.

THE case is stated in the opinion.

*Mr. J. E. Bennett* and *Mr. Geo. P. Glaze* for petitioners. *Estelle Balfour Bennett* was on the brief.

*Mr. T. B. Wilkins, Mr. Russell Brown, Mr. Geo. B. Rittenhouse, Mr. P. T. McVay, Mr. Clinton A. Galbraith* and *Mr. George Trice* for respondent.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a proceeding by and on behalf of Coleman J. Ward and sixty-six other Indians to recover moneys alleged to have been coercively collected from them by Love County, Oklahoma, as taxes on their allotments, which under the laws and Constitution of the United States were nontaxable. The county commissioners disallowed the claim and the claimants appealed to the district court of the county. There the claimants' petition was challenged by a demurrer, which was overruled,

and the county elected not to plead further. A judgment for the claimants followed, and this was reversed by the Supreme Court. 68 Oklahoma, —— The case is here on writ of certiorari.

The claimants, who were members of the Choctaw tribe and wards of the United States, received their allotments out of the tribal domain under a congressional enactment of 1898, which subjected the right of alienation to certain restrictions and provided that "the lands allotted shall be nontaxable while the title remains in the original allottee, but not to exceed twenty-one years from date of patent." C. 517, 30 Stat. 507. In the Act of 1906, enabling Oklahoma to become a State, Congress made it plain that no impairment of the rights of property pertaining to the Indians was intended, c. 3335, § 1, 34 Stat. 267; and the State included in its constitution a provision exempting from taxation "such property as may be exempt by reason of treaty stipulations, existing between the Indians and the United States government, or by Federal laws, during the force and effect of such treaties or Federal laws." Art. 10, § 6. Afterwards Congress, by an act of 1908, removed the restrictions on alienation as to certain classes of allottees, including the present claimants, and declared that all land from which the restrictions were removed "shall be subject to taxation . . . as though it were the property of other persons than allottees." C. 199, §§ 1, 4, 35 Stat. 312.

Following the last enactment the officers of Love and other counties began to tax the allotted lands from which restrictions on alienation were removed, and this met with pronounced opposition on the part of the Indian allottees, who insisted, as they had been advised, that the tax exemption was a vested property right which could not be abrogated or destroyed consistently with the Constitution of the United States. Suits were begun in the state courts to maintain the exemption and enjoin the

threatened taxation, one of the suits being prosecuted by
some 8,000 allottees against the officers of Love and
other counties. The suits were resisted, and the state
courts, being of opinion that the exemption had been re-
pealed by Congress, sustained the power to tax. *English
v. Richardson*, 28 Oklahoma, 408; *Gleason v. Wood, ibid.*
502; *Choate v. Trapp, ibid.* 517. The cases were then
brought here, and this court held that the exemption
was a vested property right which Congress could not
repeal consistently with the Fifth Amendment, that it
was binding on the taxing authorities in Oklahoma, and
that the state courts had erred in refusing to enjoin them
from taxing the lands. *Choate v. Trapp*, 224 U. S. 665;
*Gleason v. Wood, ibid.* 679; *English v. Richardson, ibid.* 680.

While those suits were pending the officers of Love
County, with full knowledge of the suits and being de-
fendants in one, proceeded with the taxation of the allot-
ments, demanded of these claimants that the taxes on
their lands be paid to the county, threatened to advertise
and sell the lands unless the taxes were paid, did advertise
and sell other lands similarly situated, and caused these
claimants to believe that their lands would be sold if the
taxes were not paid. So, to prevent such a sale and to
avoid the imposition of a penalty of eighteen per cent.,
for which the local statute provided, these claimants
paid the taxes. They protested and objected at the time
that the taxes were invalid, and the county officers knew
that all the allottees were pressing the objection in the
pending suits.

As a conclusion from these facts the claimants asserted
that the taxes were collected by Love County by coercive
means, that their collection was in violation of a right
arising out of a law of Congress and protected by the Con-
stitution of the United States, and that the county was
accordingly bound to repay the moneys thus collected.
The total amount claimed is $7,823.35, aside from interest.

Such, in substance, was the case presented by the petition, which also described each tract that was taxed, named the allottee from whom the taxes were collected and stated the amount and date of each payment.

In reversing the judgment which the district court had given for the claimants the Supreme Court held, first, that the taxes were not collected by coercive means, but were paid voluntarily, and could not be recovered back as there was no statutory authority therefor; and, secondly, that there was no statute making the county liable for taxes collected and then paid over to the State and municipal bodies other than the county,—which it was assumed was true of a portion of these taxes,—and that the petition did not show how much of the taxes was retained by the county, or how much paid over to the State and other municipal bodies, and therefore it could not be the basis of any judgment against the county.

The county challenges our jurisdiction by a motion to dismiss the writ of certiorari and by way of supporting the motion insists that the Supreme Court put its judgment entirely on independent non-federal grounds which were broad enough to sustain the judgment.

As these claimants had not disposed of their allotments and twenty-one years had not elapsed since the date of the patents, it is certain that the lands were nontaxable. This was settled in *Choate* v. *Trapp, supra,* and the other cases decided with it; and it also was settled in those cases that the exemption was a vested property right arising out of a law of Congress and protected by the Constitution of the United States. This being so, the State and all its agencies and political subdivisions were bound to give effect to the exemption. It operated as a direct restraint on Love County, no matter what was said in local statutes. The county did not respect it, but, on the contrary, assessed the lands allotted to these claimants, placed them on the county tax roll, and there charged them with taxes like

other property. If a portion of the taxes was to go to the State and other municipal bodies after collection,—which we assume was the case,—it still was the county that charged the taxes *against these lands* and proceeded to collect them. Payment of all the taxes was demanded by the county, and all were paid to it in the circumstances already narrated.

We accept so much of the Supreme Court's decision as held that, if the payment was voluntary, the moneys could not be recovered back in the absence of a permissive statute, and that there was no such statute. But we are unable to accept its decision in other respects.

The right to the exemption was a federal right, and was specially set up and claimed as such in the petition. Whether the right was denied, or not given due recognition, by the Supreme Court is a question as to which the claimants were entitled to invoke our judgment, and this they have done in the appropriate way. It therefore is within our province to inquire not only whether the right was denied in express terms, but also whether it was denied in substance and effect, as by putting forward non-federal grounds of decision that were without any fair or substantial support. *Union Pacific R. R. Co.* v. *Public Service Commission,* 248 U. S. 67; *Leathe* v. *Thomas,* 207 U. S. 93, 99; *Vandalia R. R. Co.* v. *South Bend, ibid.* 359, 367; *Gaar, Scott & Co.* v. *Shannon,* 223 U. S. 468; *Creswill* v. *Knights of Pythias,* 225 U. S. 246, 261; *Enterprise Irrigation District* v. *Farmers Mutual Canal Co.,* 243 U. S. 157, 164. And see *Jefferson Branch Bank* v. *Skelly,* 1 Black, 436, 443; *Huntington* v. *Attrill,* 146 U. S. 657, 683–684; *Boyd* v. *Thayer,* 143 U. S. 135, 180; *Carter* v. *Texas,* 177 U. S. 442, 447. Of course, if non-federal grounds, plainly untenable, may be thus put forward successfully, our power to review easily may be avoided. *Terre Haute & Indianapolis R. R. Co.* v. *Indiana,* 194 U. S. 579, 589. With this qualification, it is true that a judgment of a state court, which is put on

independent non-federal grounds broad enough to sustain it, cannot be reviewed by us. But the qualification is a material one and cannot be disregarded without neglecting or renouncing a jurisdiction conferred by law and designed to protect and maintain the supremacy of the Constitution and the laws made in pursuance thereof.

The facts set forth in the petition, all of which were admitted by the demurrer whereon the county elected to stand, make it plain, as we think, that the finding or decision that the taxes were paid voluntarily was without any fair or substantial support. The claimants were Indians just emerging from a state of dependency and wardship. Through the pending suits and otherwise they were objecting and protesting that the taxation of their lands was forbidden by a law of Congress. But, notwithstanding this, the county demanded that the taxes be paid, and by threatening to sell the lands of these claimants and actually selling other lands similarly situated made it appear to the claimants that they must choose between paying the taxes and losing their lands. To prevent a sale and to avoid the imposition of a penalty of eighteen per cent. they yielded to the county's demand and paid the taxes, protesting and objecting at the time that the same were illegal. The moneys thus collected were obtained by coercive means—by compulsion. The county and its officers reasonably could not have regarded it otherwise; much less the Indian claimants. *Atchison, Topeka & Santa Fe Ry. Co.* v. *O'Connor*, 223 U. S. 280; *Gaar, Scott & Co.* v. *Shannon, supra*, p. 471; *Union Pacific R. R. Co.* v. *Public Service Commission, supra; Swift Co.* v. *United States*, 111 U. S. 22, 29; *Robertson* v. *Frank Brothers Co.*, 132 U. S. 17, 23; *Oceanic Steam Navigation Co.* v. *Stranahan*, 214 U. S. 320, 329. The county places some reliance on *Lamborn* v. *County Commissioners*, 97 U. S. 181, and *Railroad Co.* v. *Commissioners*, 98 U. S. 541; but those cases are quite distinguishable in their facts and some of the

general observations therein to which the county invites attention must be taken as modified by the later cases just cited.

As the payment was not voluntary, but made under compulsion, no statutory authority was essential to enable or require the county to refund the money. It is a well settled rule that "money got through imposition" may be recovered back; and, as this court has said on several occasions, "the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation." *Marsh* v. *Fulton County*, 10 Wall. 676, 684; *City of Louisiana* v. *Wood*, 102 U. S. 294, 298–299; *Chapman* v. *County of Douglas*, 107 U. S. 348, 355. To say that the county could collect these unlawful taxes by coercive means and not incur any obligation to pay them back is nothing short of saying that it could take or appropriate the property of these Indian allottees arbitrarily and without due process of law. Of course this would be in contravention of the Fourteenth Amendment, which binds the county as an agency of the State.

If it be true, as the Supreme Court assumed, that a portion of the taxes was paid over, after collection, to the State and other municipal bodies, we regard it as certain that this did not alter the county's liability to the claimants. The county had no right to collect the money, and it took the same with notice that the rights of all who were to share in the taxes were disputed by these claimants and were being contested in the pending suits. In these circumstances it could not lessen its liability by paying over a portion of the money to others whose rights it knew were disputed and were no better than its own. *Atchison, Topeka & Santa Fe Ry. Co.* v. *O'Connor, supra*, p. 287. In legal contemplation it received the money for the use and benefit of the claimants and should respond to them accordingly.

The county calls attention to the fact that in the demurrer to the petition the statute of limitation (probably meaning § 1570, Rev. Laws 1910), was relied on. This point was not discussed by the Supreme Court and we are not concerned with it beyond observing that when the case is remanded it will be open to that court to deal with the point as to the whole claim or any item in it as any valid local law in force when the claim was filed may require.

*Motion to dismiss denied.*

*Judgment reversed.*