RESERVE LIFE INSURANCE COMPANY

v.

L. G. SALTER et al.

Civ. A. No. 783.

United States District Court
S. D. Mississippi, E. D.

June 28, 1957.

William A. Bacon, Jackson, Miss., Joe Bailey Humphreys, Dallas, Tex., William D. Adams, Jackson, Miss., for plaintiff.

J. A. Covington, Jr., Meridian, Miss., W. H. Sanford, Jr., Philadelphia, Miss., for defendants.

BENJAMIN C. DAWKINS, Sr., District Judge.

Plaintiff, a citizen of Texas, issues among other types, policies of insurance covering hospital, doctors and medical bills. Defendants are Neshoba County, who owns and operates Neshoba County Hospital through a board of five Trustees, the said hospital, the members of its Board, officially and individually, and L. G. Salter, Administrator of the hospital, likewise individually, all citizens of the State of Mississippi. Jurisdiction, therefore, is based upon diversity of citizenship.

The claim is for refund of overcharges allegedly falsely made in the accounts of several hundred policyholders, for accommodations, medicines and services while in the hospital, which were paid by complainant when presented. The complaint further alleges that when paid, all of these bills appeared to be within the terms of the policies, but that upon investigation and inspection of the hospital records, the alleged over-charges exceeded by several thousand dollars the amounts actually due for which it prayed judgment as money wrongly received and withheld.

The County, the Hospital, and its Trustees moved to dismiss the complaint on the ground it was an action in tort, and as agents or subdivisions of the State, they enjoyed the latter's immunity from suit under well-recognized principles of public policy. These motions were overruled by Circuit Judge Cameron sitting for Judge Mize, and I think correctly so. The action is not one in tort, but for money had and received, allegedly not due, as much so as if the over-payments had been made through honest clerical mistake, and created and implied obligation or con-

tract to refund them; the only difference being that here, allegedly, they were wrongfully and knowingly extracted from plaintiff by Salter as Administrator of the hospital, but nevertheless went into deposits with the County by the Hospital, which was owned and controlled by the former under the statutes. This appears to be conclusively the law. Ward v. Board of County Commissioners, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751; Pimental v. City of San Francisco, 21 Cal. 352; Trotter v. Peterson, 166 Tenn. 142, 60 S.W.2d 149.

Act 287 of 1954 authorizes any County to establish, own and operate hospitals, and both may sue and be sued, but for certain purposes of administration are separate entities. Yet, the County under the law provides the money for building, equipping and operating the hospital, if the revenues are insufficient. So that for all practical purposes it is owned and operated through the Board of Trustees and Administrator as Agents.

There appears to be only two questions requiring serious consideration, to wit: (1) Are the members of the Board of Trustees for the hospital individually liable for the misdeeds of Salter? and (2) was the amount due sufficiently proven under the peculiar circumstances of this case?

■ Modern conditions and practices in the treatment of sick people are a far cry from the old days of the family doctor, the midwife and the practical nurse, but have added years to life expectancy. Like other phases of present day living, what were formerly luxuries, such as hospitals, their facilities, "miracle drugs" and specialists of all kinds, are considered necessities. Unfortunately, however, the cost has become almost prohibitive to one of small means and, as has been said, only the capitalist or pauper (the latter at the taxpayers' expense) can have them. In the average hospital where full-time trained nurses (one for each eight-hour period) and a private room are required, the patient must pay approximately $50 a day, not including medicines, operating and other special facilities, or doctors' bills. This matter of health, like many other phases of our lives, has induced those lawmakers whose fingers are on the pulse of voters to seek means, at taxpayers expense, of course, for providing such services, even luxuries, to those who cannot do so for themselves. Being thus infested with politics, abuses are almost inevitable as illustrated in this case. To select a governing board for an institution as complex as a hospital in the manner used here, chosen as political patronage by County Supervisors from their respective districts without any requirement of training, experience or knowledge of what was expected of them was calculated to bring about the very result which developed here. Failing to appreciate their duties and responsibilities led these Trustees to feel, according to their testimony, that they had discharged their duties by picking as Administrator, Salter, a former school teacher, apparently as ignorant of operating a hospital as they themselves were. Their attachment to him was such that, despite the refusal of other state agencies to deal with Salter in certain respects, and his dismissal, these Trustees again rehired and restored him to the position of Administrator for the hospital. They seemed to think, because Salter had changed the hospital's financial position from a deficit of several thousand dollars to one of approximately the same amount on the black side of the ledger, this justified his restoration. However, the record fails to show they were aware of his "padding" the bills rendered the plaintiff, or that they were guilty of any act connected therewith other than their negligent failure, through ignorance to understand the seriousness of their duties with respect to the hospital and its management. Until this lawsuit brought them to their senses, I am convinced that the fault was that of the system inaugurated by the Legislature and left largely to run itself in a morass of ignorance and politics. It would be surprising if any of these comparatively small County

hospitals do not prove to be a financial drain upon the state or county, ultimately the taxpayers, due to the fact that political influence will doubtless permit many persons to be served as charity patients, just as elsewhere, who, because of ability to pay at least a portion of the cost, could never get a "free ride" at a private institution.

Other than drawing small amounts for compensation and expenses, claimed to have been done in good faith, until they found this could not be done legally, the record does not support the idea that the Trustees knew of or were parties to the frauds of Salter. For these reasons, I do not think there should be judgment against them individually.

On the other hand, Salter knew what he was doing, and much of the money which he collected from plaintiff was not reflected in the files made at the time, for the insured patients. He admitted that bills sent the plaintiff were made up in considerable part from his personal recollection, when a substantial number of patients were checking in and out daily, to say nothing of the many other duties which he had to perform. He also testified that he charged more, where the patient held hospital insurance, for the same services, and while no fees or charges had been fixed by rule or otherwise, plaintiff in its policy contracts agreed to pay the "usual and customary" amounts, generally charged for the services. By accepting assignments of the rights of insured patients thereunder, the hospital became party thereto and could collect no more than the policyholder had he, himself, paid and claimed reimbursement from the insurer. Defendants cite cases where doctors and lawyers were permitted to charge more because of the patient's or client's ability to pay, or in case of successions the size of the estate, etc. However, they have no application here for none of the skills or professional qualifications of the individual doctor or lawyer can be said to enter into hospital service, which presumably is the same in quality for all patients.

As to the amount of recovery, while the court might appoint an expert accountant and have him audit the 320 accounts or files of insured patients which were found or produced, to test the correctness of the summaries of plaintiff's witnesses as to the overcharges, this would require studying the note of evidence of several hundred pages, along with the Hospital charts, and then a further hearing at considerable increase in the costs to be ultimately borne by the losing party. On the other hand the Court does not feel it is bound to discuss in detail here the hundreds of items which make up these overcharges, especially when defendants have made no attempt to rebut or attack the figures of the plaintiff by explanation or analysis of their own accounts, except by meager and implausible testimony of Salter. This was a situation of needless confusion created by Salter and his methods, in which he was given a free hand by the Trustees to the knowledge and apparent approval of the County and its supervisors.

With respect to the missing files, there is a general rule that a plaintiff shall make his case by the best available evidence, but where that is not possible due to failure to produce 169 charts alleged to have been damaged and destroyed, but not satisfactorily proven, and in the light of the over-charges shown in a large percentage of those which were produced, justifies the conclusion that, had they been produced, at least the same percentage of frauds would have been disclosed. Those figures were subject to attack by defendants with such evidence as they could produce from their own records, but when no attempt is made to do so, after full opportunity, save by feeble generalities and failure to make a thorough search for the missing files, the effect is to strengthen plaintiff's proof and to warrant a recovery of the amounts shown by comparison with the records which were produced.

For the reasons stated my conclusion is that plaintiff has proven its

case and is entitled to recover the sum of $5,779.62 for money had and received by defendants and that judgment therefor, interest and costs, should run against Neshoba County, Neshoba County Hospital and L. G. Salter.