_____

Nos. 95-2529
     95-2535
     95-2720
_____

United States of America, on        *
behalf of the Cheyenne River        *
Sioux Tribe and its members,        *
                                    *
     Plaintiff/Appellant/Cross      *
     Appellee,                      *
                                    *
Cheyenne River Sioux Tribe,         *
                                    *
     Intervenor Plaintiff/          *
     Appellant/Cross Appellee,      *
                                    *
     v.                             *
                                    *
State of South Dakota; Julie        *
M. Johnson, State Secretary of      *
Revenue,                            *
                                    *
     Defendants/Appellees/Cross     *
     Appellants,                    *   Appeals from the United States
                                    *   District Court for the
Ronald J. Schreiner; Dewey          *   District of South Dakota
County, South Dakota;               *
John Alley, County Treasurer;       *
Ziebach County, South Dakota;       *
Virginia Hertel, County             *
Treasurer,                          *
                                    *
     Defendants/Appellees.          *
                                    *
         _____           *
                                    *
         No. 95-2688                *
         _____           *
                                    *
Rosebud Sioux Tribe,                *
                                    *
     Plaintiff/Appellant,           *

v.                                    *
                                      *
Julie Johnson, State Secretary        *
of Revenue,                           *
                                      *
        Defendant/Appellee.           *
_____                          *
                                      *
United States of America,             *
                                      *
        Amicus Curiae.                *

                            _____

                    Submitted:  May 16, 1996

                    Filed:  January 17, 1997
                            _____

Before MURPHY and ROSS, Circuit Judges, and VAN SICKLE,* District Judge.
                            _____

MURPHY, Circuit Judge.

        These two cases challenge the jurisdiction of the State of South
Dakota to impose its motor vehicle excise tax and registration fee on
Indians who live within the boundaries of a reservation.  In one case, the
United States sued for declarative, injunctive, and compensatory relief on
behalf of the Cheyenne River Sioux Tribe and its members.  The second case
involves claims brought by the Rosebud Sioux Tribe for equitable relief.

        South Dakota Codified Laws section 32-5B-1 provides that residents
shall pay an excise tax on the value of any motor vehicle purchased or
acquired for use in the state and required to be registered.  S.D. Codified
Laws Ann. § 32-5B-1.[1]  The excise tax is

_____

        *The HONORABLE BRUCE M. VAN SICKLE, United States District
Judge for the District of North Dakota, sitting by designation.

        [1]The statute provides:

        In addition to all other license and registration fees
for the use of the highways, a person shall pay an excise tax at
the rate of three percent on the purchase price of any motor
vehicle . . . purchased or acquired for use on the streets and
highways of this state and required to be registered under the

                                    2

a one time assessment collected by the county in which the owner resides when the vehicle is first licensed in the state.  Id. § 32-5B-10.  Payment of the excise tax is required for the issuance or transfer of state vehicle title, id. § 32-5B-14, and is thus a condition precedent to registration and issuance of state license plates.[2]  The proceeds are allocated to the state highway fund.  Id. § 32-5B-17.  Failure to pay the excise tax is a misdemeanor.  § 35-5B-1.

South Dakota Codified Laws section 32-5-5 imposes a separate motor vehicle registration fee on state residents.  S.D. Codified Laws Ann. § 32-5-5.[3]  The annual fee is based on the weight of the vehicle and ranges from $20 to $40 for average noncommercial

---

laws of this state.  This tax shall be in lieu of any tax levied by chapters 10-45 and 10-46 on the sales of such vehicles.  Failure to pay the full amount of excise tax is a Class 1 misdemeanor.

S.D. Codified Laws Ann. § 32-5B-1.

[2]The issuance or transfer of a certificate of title also requires payment of a $5 fee, which is not challenged by the parties in this case.

[3]The statute provides:

> Subject to the provisions of §§ 32-5-17 to 32-5-45, inclusive, license fees and compensation for use of the highways, fees shall be based, except as otherwise specifically provided, upon manufacturers' weights, including accessories.  If a noncommercial motor vehicle is an automobile, pickup truck or van with a manufacturer's shipping weight, including accessories, of six thousand pounds or less, the license fees for such a motor vehicle shall be as provided by § 32-5-6. . . . These fees shall be paid annually to the county treasurer, and shall be as provided by this chapter.

S.D. Codified Laws Ann. § 32-5-5.

3

vehicles.  It is collected at the time the owner obtains license plates or renewal tags, and is a condition precedent for their issuance.  <u>Id.</u>  A percentage of the collected fees goes toward administrative costs, and the remainder is allocated to various road funds.  Failure to pay the registration fee is a misdemeanor.  § 32-5-2.4.

I.

The Cheyenne River Sioux Tribe is a federally recognized Indian tribe.  In 1868 the Fort Laramie Treaty, 15 Stat. 635, established the Great Sioux Reservation for the use and occupancy of the Sioux Nation.  Congress later created the Cheyenne River Indian Reservation in 1889 on part of the treaty land as a separate reservation for the Cheyenne River Sioux Tribe.  <u>See</u> <u>South Dakota v. Bourland</u>, 508 U.S. 679 (1993).  In 1908 Congress opened a significant portion of the reservation to non-Indian settlement, but this did not diminish the reservation.  <u>See</u> <u>Solem v. Bartlett</u>, 465 U.S. 463 (1984).  The reservation wholly encompasses Dewey and Ziebach counties in the State of South Dakota.  Its residents include tribal members, nonmember Indians, and non-Indians.

The tribe believes that all Indians residing on the Cheyenne River Indian Reservation are immune from state taxation of their motor vehicles, including both the excise tax and the annual registration fee.  The tribal council has consistently maintained that the state lacks authority to collect the excise tax and registration fee from tribal members,[4] and there is evidence in the record that at least some members have paid the excise tax and  registration fee under protest.

---

[4]Motor vehicles owned by the tribe itself are statutorily exempt from the state excise tax and registration fee, and license plates are issued for a fee based on actual administrative costs. S.D. Codified Laws Ann. § 32-5-42 (registration fee); <u>id.</u> § 32-5B-2(1) (excise tax).

4

The statutes do not create an exemption for Indian-owned vehicles that are driven exclusively on reservation land, but the state apparently does not enforce its motor vehicle registration laws in such circumstances. The owner of any vehicle driven outside the reservation is subject to criminal penalties for improper registration, however. At one time, tribal law incorporated state traffic laws and required all motor vehicles driven on the reservation to have valid state license plates. In 1994 the tribe enacted its own motor vehicle registration system, but has not yet implemented it to avoid imposing double fees on reservation residents.

On September 3, 1992 the United States brought suit on behalf of the Cheyenne River Sioux Tribe and its members, seeking a declaration that the state lacks jurisdiction to impose its motor vehicle excise tax and registration fee on Indians residing on the Cheyenne River reservation.[5] It also sought an injunction against the collection of the fees and taxes, and monetary damages in the amount of taxes paid between 1986 and the present. On August 24, 1993, the Cheyenne River Sioux Tribe was permitted to intervene as a plaintiff pursuant to Federal Rule of Civil Procedure 24(b).

In February 1995 the district court[6] ruled on cross motions for summary judgment. It held that the excise tax was essentially a personal property tax and thus could not be imposed on tribal members living on the reservation. See Oklahoma Tax Comm'n v. Sac and Fox Nation, 508 U.S. 114, 127-28 (1993). It viewed the annual registration fee differently, concluding that it was a nondiscriminatory fee that could validly be collected from tribal

---

[5]The suit named as defendants the State of South Dakota and its Secretary of Revenue, as well as two counties and the county treasurers.

[6]The Honorable John B. Jones, United States District Judge for the District of South Dakota.

5

members residing on the reservation who elected to purchase state license plates. The district court did not extend immunity from the excise tax to nonmember Indians and did not award damages to tribal members. Judgment was entered on February 23, 1995, and the parties filed cross appeals.

The United States and the tribe argue that the registration fee operates as a tax and thus cannot be imposed on reservation Indians. They also claim that monetary damages should be awarded for taxes previously paid. The tribe also argues that tax immunity should be extended to nonmember Indians residing on the Cheyenne River reservation. South Dakota responds that the district court correctly determined the registration fee to be valid, denied monetary damages, and held that nonmember Indians were not immune from taxation. It argues on cross appeal that the excise tax is a valid sales and use tax.

A.

As a general rule, a state lacks jurisdiction to tax the lands, activities, and property of tribal members "'within the boundaries of the reservation,'" unless there has been a "'cession of jurisdiction or other federal statutes permitting it.'" California v. Cabazon Band of Mission Indians, 480 U.S. 202, 215 n. 17 (1987) (quoting Mescalero Apache Tribe v. Jones, 411 U.S. 145, 148 (1973)). In other words, a tribal member's on-reservation activities are immune from state taxation absent express congressional authorization of the tax. McClanahan v. State Tax Comm'n of Arizona, 411 U.S. 164, 171 (1973). This is because a state's authority to tax on-reservation activities is limited or preempted by the terms of treaties which set aside reservations for the exclusive use of Indian tribes and by various federal statutes

defining the limits of state power. Id.[7]  The doctrine of Indian sovereignty reflects the "'deeply rooted'" historical policy of "'leaving Indians free from state jurisdiction and control.'"  Id. at 168 (quoting Rice v. Olson, 324 U.S. 786, 789 (1945)).  That doctrine "provides a backdrop against which the applicable treaties and statutes must be read." Id. at 172.

Congress has not specifically authorized the taxation of a tribal member's personal property, and South Dakota thus lacks jurisdiction to impose such a tax.  This would include any tax or fee that operates as a personal property tax on motor vehicles owned by tribal members living on the reservation.  Oklahoma Tax Comm'n v. Sac and Fox Nation, 508 U.S. 114, 127-28 (1993); Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134, 163 (1980); Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 480-81 (1976).

The general rule of tax immunity applies to activities that occur on the reservation, including ownership of property, but "different considerations" apply to off-reservation activities.  Mescalero, 411 U.S. at 148.  Indians who go beyond reservation boundaries are generally "held subject to nondiscriminatory state law otherwise applicable to all citizens." Id. at 148-49.  This reasoning suggests that states may impose on tribal members a sales tax or other nondiscriminatory tax on off-reservation purchases.  See Tunica-Biloxi Tribe v. Louisiana, 964 F.2d 1536 (5th Cir. 1992).

The parties do not disagree about the general rule of tax immunity for tribal members within the boundaries of a reservation or the authority of the state to tax off-reservation sales

_____

[7]The analysis in McClanahan relies on the language in a treaty with the Navajo.  South Dakota does not claim that the analysis should be different in this case or argue that it has jurisdiction to tax on-reservation activities or property.

7

transactions.  South Dakota admits that it would lack authority to impose state property taxes on members of the Cheyenne River Sioux Tribe living on the reservation, and the tribe concedes that its members could validly be required to pay a sales tax on off-reservation purchases, a properly limited state road use tax, or certain non-discriminatory fees.  The dispute here is one of classification:  what sort of tax or fee is created by these statutes?

South Dakota argues that the excise tax is a sales tax on off-reservation purchases of motor vehicles.  The statute itself speaks of levying an excise tax, "in lieu of" any sales or use tax, on the value of any motor vehicle "purchased or acquired for use" in the state.  § 32-5B-1. Unlike the state sales tax, the excise tax is not imposed on the retailer or at the time of sale.[8]  Compare S.D.

_____

[8]The dissent attempts to make too much of the mention of the fact that the South Dakota excise tax is not collected by the retailer at the time of sale.  This is but one of the facts that make up the total circumstances showing that the excise tax is a tax on personal property rather than a sales tax.  The tax only applies to certain types of vehicles sales in South Dakota.  It also applies to vehicles purchased by South Dakota residents outside of the state and to certain vehicles not recently purchased, but recently brought into the state.  Furthermore, it arises on application for title, rather than on vehicle sale.

Under the teaching of Supreme Court precedent it is the nature and characteristics of the particular tax that determines whether the tax is permissible, not the nature of the label applied to it. Sac and Fox, 508 U.S. at 127-28; Colville, 447 U.S. at 163.  This requires examination of all the attributes of the particular tax.  The dissent ignores this principle and selects only certain factors to analyze.

The dissent also has done its own survey of taxes in other states in the circuit and concludes that they show some similarities to the South Dakota excise tax.  There is no information about whether any of these states have attempted to apply the taxes to on-reservation Indians, and if so, what the result has been.  This discussion of other state taxes is not based on the record before the court, and the parties have had no occasion to address the possible relevance or irrelevance of the dissent's speculation about other state laws and its invitation

8

Codified Laws Ann. § 10-45-2 (retail sales tax) <u>with</u> § 32-5B-10 (excise tax).  Nor is the excise tax revenue credited to the general revenue fund.  <u>Compare</u> S.D. Codified Laws Ann. § 10-46-48 <u>with</u> § 32-5B-17.  Although the amount of the tax is based on the "purchase price," that term is defined to include either the actual consideration paid or the actual value of the vehicle.  <u>See</u> S.D. Codified Laws Ann. §§ 32-5B-4(3)-(5), 32-5B-11.

The excise tax does not operate like a sales tax.  It might resemble a sales tax in some cases, such as when a new or used car is purchased from a licensed dealer in South Dakota and registered there by the new owner.  In other circumstances, however, the tax more obviously relates to the ownership of the vehicle as property rather than the sales transaction itself.  For example, the tax does not apply to all motor vehicle sales in the state, but only to those resulting in ownership by a South Dakota resident.  The tax is not paid unless the owner applies for the issue or transfer of South Dakota title.  § 32-5B-14.  Conversely, the excise tax does apply to vehicles purchased out of state by South Dakota residents.  Moreover, the tax applies to motor vehicles that are being newly brought into the state, but have not recently been purchased.  A person moving to South Dakota and applying for a state motor vehicle title is taxed at a percentage of the retail value of the vehicle on the day it enters the state, unless the owner provides sufficient proof that the vehicle was subject to an equal or greater tax in another state.  § 32-5B-11.

South Dakota asserts that <u>Tunica-Biloxi Tribe v. Louisiana</u>, 964 F.2d 1536 (5th Cir. 1992), supports its claim that the excise tax is a valid sales tax, but the tax at issue in that case was different from the South Dakota excise tax.  <u>Tunica</u> involved a Louisiana tax on the "sale at retail" of any item of property

---

for additional litigation.

within the state.  That tax did not apply to items purchased out of state.[9]
Purchasers from outside Louisiana could also be subject to the sales tax
unlike the South Dakota tax which is not applied to out-of-state
purchasers.  Since the characteristics of the South Dakota tax differ from
the Louisiana tax, the outcome here is not inconsistent with Tunica.  It
is simply wrong to suggest that our decision will create a split among the
circuits.[10]

The South Dakota excise tax resembles the personal property taxes
found to be preempted in Moe, Colville, and Sac and Fox.  Colville involved
a Washington "excise tax" which was assessed annually at a percentage of
a motor vehicle's value for the "privilege" of using a motor vehicle in the
state.  447 U.S. at 162.  The Supreme Court held that the tax was similar
in all but name to the personal property tax on motor vehicles that had
been invalidated as applied to tribal members in Moe, 425 U.S. at 480-81.
Colville, 447 U.S. at 163.  Similarly, in Sac and Fox, the Supreme Court
held that Oklahoma's motor vehicle excise tax and its yearly vehicle
registration fee operated as personal property taxes and thus could not be
imposed on tribal members living on the reservation.  508 U.S. at 127-28.
The South Dakota tax is not identical to the taxes in Moe, Colville, and
Sac and Fox, but it has important similarities.  Like them, the South
Dakota tax is applied to motor vehicle owners, rather than simply to
purchasers, and is based on a percentage of the value of the motor vehicle.
 Sac and Fox, 508 U.S. at 119;  Colville, 447 U.S. at 163 (discussing Moe).
It is true that this tax is not applied annually,

_____

[9]Louisiana also imposed a separate "use tax" on the fair
market value of vehicles purchased out of state and later brought
into it.  That tax was not at issue in Tunica, but the court
indicated that its validity might have presented a different
question.  964 F.2d at 1540-41.

[10]It should also be noted that the Fifth Circuit did not
have the benefit of the most recent Supreme Court guidance in
this area, because Tunica was decided before Sac and Fox.

10

but neither was the tax found invalid in <u>Sac and Fox</u>.[11]  <u>Sac and Fox</u>, 508 U.S. at 126.

The South Dakota excise tax essentially operates as a tax on the ownership of a motor vehicle, rather than as a tax on off-reservation sales transactions.  The ownership of a vehicle is the sort of on-reservation activity that a state is not permitted to tax without express Congressional authorization.  <u>See</u> <u>Sac and Fox</u>, 508 U.S. at 127.  The district court did not err in ruling that the state lacks jurisdiction to impose the excise tax on tribal members residing on the reservation.

B.

The United States and the Cheyenne River Sioux Tribe argue that the state similarly lacks jurisdiction to impose its annual registration fee on reservation Indians because it operates to tax on-reservation activities.  South Dakota responds that it has authority to impose the fee because it is a nondiscriminatory fee for off-reservation activities.  The issue is again one of classification.

The United States and the tribe claim that the fee actually operates as a tax on the ownership of vehicles and is therefore preempted under <u>Sac and Fox</u>, <u>Colville</u>, and <u>Moe</u>.  In <u>Sac and Fox</u> the Court held Washington's annual registration fee to be invalid as applied to reservation Indians, but that fee was based on the value of a vehicle and thus was like a personal property tax.  <u>Id.</u> at 127-28.  It was found to be no different from the taxes held preempted in <u>Moe</u> and <u>Colville</u>.  South Dakota's registration fee does not resemble a property tax, however.  It is not based on the

---

[11]Contrary to the dissent's implication in its discussion of <u>Moe</u> and <u>Colville</u>, <u>Sac and Fox</u> indicates that a state without authority to impose an annual tax has no more authority to impose a one-time tax.

value of the vehicle, but is a flat fee based on weight, and any proceeds resulting from it are dedicated to highway purposes.

The United States and the tribe also suggest that the fee is a tax on the use of state roads. They concede that a state might have jurisdiction to impose a tax on reservation Indians for the use of off-reservation roads, but argue that the fee here is not "tailored to the actual amount of off-reservation use" as required by Colville, 447 U.S. at 163-64.

In Colville, the Supreme Court rejected the State of Washington's claim that its excise tax was actually a tax on the use of the vehicle within the state. It held that the tax effectively functioned as a personal property tax, which had previously been held invalid as applied to tribal members in Moe:

> We do not think Moe and McClanahan can be this easily circumvented. While Washington may well be free to levy a tax on the use outside the reservation of Indian-owned vehicles, it may not under that rubric accomplish what Moe held was prohibited. Had Washington tailored its tax to the amount of actual off-reservation use, or otherwise varied something more than mere nomenclature, this might be a different case.

Id. There is no suggestion in the South Dakota statute that the purpose of the fee is to tax the use of the state roads. Even if it were, the tax is significantly different from a property tax so that the concerns expressed in Colville are avoided.

The registration fee is a nondiscriminatory fee for the registration of a vehicle in the state and the issuance of state license plates. See Moe, 425 U.S. at 469 (Montana fee required for registration and issuance of state license plates could be imposed

12

on reservation Indians).[12]  It is not collected from owners of motor vehicles that are not registered with the state, including those driven exclusively within the boundaries of the reservation.  The concerns related to state taxation of on-reservation activities are not present here because the fee is not based on any on-reservation activity.  Accordingly, the district court did not err in ruling that Indians who elect to purchase South Dakota license plates or renewal tags can be required to pay the annual registration fee.

C.

The Cheyenne River Sioux Tribe argues that immunity from the excise tax should not be limited to tribal members but should extend to nonmember Indians residing on the reservation.  South Dakota responds that the interests of nonmember Indians have not been properly raised, and argues that nonmember Indians are subject to state taxation because they have the same status as non-Indians.

The state's power to tax nonmember Indians is not directly raised by this action, because no nonmember Indians are parties to this case.  The United States initiated the action "on behalf of the Cheyenne River Sioux Tribe and its members," and the tribe intervened "to protect its sovereign right to raise revenue to finance its state government . . . ."

Even if the issue had been properly presented, the arguments made are not convincing.  As discussed above, the tax immunity of reservation Indians is premised on the preemption of state laws by treaty and statute and informed by notions of tribal self government.  These reasons underlying immunity do not have the same

_____

[12]Montana's registration fee was not challenged by the tribe in Moe, but the Court's analysis suggests a basis to differentiate between a registration fee that could be imposed on reservation Indians and a personal property tax that could not.

13

force as applied to Indians who are not members of the governing tribe.[13] See Colville, 447 U.S. at 160-61 (retail sales tax immunity for on-reservation sales does not extend to nonmember Indians residing on reservation).

The tribe argues that the interest in tribal self government extends to nonmember Indians because Congress has defined tribal self government to include all Indians. Although Congress has defined tribal powers of self government to include criminal jurisdiction over "all Indians," 25 U.S.C. § 1301, there is no question that South Dakota retains civil regulatory jurisdiction over nonmember Indians in the same way that it does over non-Indians on the reservation. See id.

The tribe also asserts that the terms of the 1868 treaty creating the Great Sioux Reservation establishes that nonmember Indians have an interest in tribal self government. It points to language setting aside land for the use of the Sioux Nation and "for such other friendly tribes or individual Indians as from time to time they may be willing . . . to admit amongst them." Art. 2. (15 Stat. 653). Nonmember Indians living on the reservation are not in fact involved in tribal self government, however. The Cheyenne River Sioux Tribe's constitution and bylaws do not allow nonmember Indians to vote in tribal elections or hold office on the reservation.

The tribe also argues that at a minimum any Sioux Indian residing on its reservation should be immune from taxation because all Sioux are part of the Sioux Nation. The Great Sioux Reservation was divided into separate reservations for various

---

[13]The tribe argues that state taxation of nonmembers is preempted by the comprehensive federal Indian country road system, but the statutes and regulations implementing that system do not demonstrate a Congressional intent to exempt nonmember Indians from state taxation. See Colville, 447 U.S. at 161.

14

Sioux tribes, including the Cheyenne River Sioux. Although the different Sioux tribes share common ties, they exist as separate entities with their own constitutions and governing structures. Nonmember Sioux residing on the Cheyenne River reservation are not allowed to vote or hold office, and are not actually constituents of the governing tribe.

D.

The United States and the tribe argue that monetary damages should be awarded to compensate for past payments of the excise taxes by tribal members.[14] The district court rejected the claim for damages because previous cases addressing motor vehicle taxation had not been applied retroactively. South Dakota offers several alternative rationales for denying monetary relief.

The district court correctly noted that the opinions in <u>Moe</u>, <u>Colville</u>, and <u>Sac and Fox</u> did not grant retroactive relief, but those cases did not involve claims for monetary damages. Rather they were claims for declaratory and injunctive relief. When a state tax is declared to be invalid either "because . . . it [is] beyond the State's power to impose" or "because the taxpayers were absolutely immune from the tax," the State must "'undo' the unlawful deprivation by refunding the tax previously paid under duress." <u>McKesson Corp. v. Division of Alcoholic Beverages and Tobacco</u>, 496 U.S. 18, 39 (1990) (citing <u>Ward v. Love County Board of Comm'rs</u>, 253 U.S. 17, 24 (1920)). In other words, the holding in such cases would be applied retroactively.

The state claims that a damage award is barred by the Eleventh Amendment. It cites <u>Blatchford v. Native Village of Noatak</u>, 501

---

[14]They actually seek damages for payments by all reservation Indians of both the excise tax and the registration fee, but the claims of nonmembers and those claims based on the registration fee are foreclosed for the reasons already discussed.

U.S. 775 (1991), in which the Supreme Court held that the Eleventh Amendment would bar damage claims brought by Indian tribes against a state.[15]  The Eleventh Amendment does not bar suits brought by the United States on behalf of Indian tribes or their members, however.  United States v. Minnesota, 270 U.S. 181, 195 (1926); United States v. Board of Comm'rs of Osage County, 251 U.S. 128, 133 (1919).  The Blatchford Court recognized that the tribal claims would not have been barred if brought by the United States, but held that tribal access to federal court was not as broad.  Blatchford, 501 U.S. at 783-84.  The Eleventh Amendment does not apply in the Cheyenne River case because the United States brought the action.

The state also argues that damages should be denied because payment of the taxes was required by tribal law and thus was not coerced by the state.  A 1987 resolution incorporated into tribal law certain provisions of the South Dakota Traffic Code, including the requirement that vehicles bear valid state license plates.  Neither that resolution nor a clarifying resolution passed in 1990 addressed the payment of the state excise tax or suggested that its collection from tribal members was valid.  The tribal council has consistently protested the imposition of state motor vehicle taxes on its members, and has now adopted its own registration system.

An additional argument by the state is that the excise taxes were paid voluntarily and thus cannot be recovered back as a matter of law or equity.  Taxes that are voluntarily paid because of a

---

[15]Blatchford distinguished its facts from those in Moe where there was federal jurisdiction over a state tax injunction action brought by an Indian tribe.  Blatchford suggested that such actions do not implicate the Eleventh Amendment when brought against state officers rather than the state itself.  501 U.S. at 785 n. 3.  (Moe held that the Tax Injunction Act, 28 U.S.C. § 1341, did not deprive federal courts of jurisdiction over tax injunction claims brought by Indian tribes, because Congress had separately provided for jurisdiction over tribal claims in 28 U.S.C. § 1362. 425 U.S. at 472-75).

16

mistake of law cannot be recovered back, see Security National Bank of Watertown v. Young, 55 F.2d 616, 619 (8th Cir.), cert. denied, 286 U.S. 551 (1932), but taxes paid under duress or coercion are recoverable, and state refund procedures do not limit such recovery. McKesson, 496 U.S. at 31; Board of Comm'rs of Jackson County v. United States, 308 U.S. 343, 350 (1939) (citing Osage County, 251 U.S. 128 and Ward, 253 U.S. 17).

The record related to the nature and amount of the damage claims in the Cheyenne River case has not been fully developed. There is anecdotal evidence describing informal protests by several tribal members at the time of payment, claiming that the tax was paid to avoid criminal penalties, and suggesting that the state refund procedure is inadequate. These issues were not reached by the district court because of the mistaken view that damages were necessarily barred. The judgment should be reversed to the extent that it eliminated any possibility of damages. On remand the district court should determine whether damages should be awarded and, if so, in what amount.

II.

The Rosebud Sioux Tribe is also a federally recognized Indian tribe, and the initial history of the Rosebud Indian Reservation parallels that of the Cheyenne River reservation. Initially part of the Great Sioux Reservation established by the Fort Laramie Treaty, 15 Stat. 635, the Rosebud reservation was set apart by the Act of March 2, 1889, 25 Stat. 888, 892. The reservation was diminished by Congressional acts near the turn of the century, and now consists of Todd County, South Dakota. See Rosebud Sioux Tribe v. Kneip, 430 U.S. 584, 615 (1977). Tribal members living on allotted lands outside the reservation are considered to be in Indian country. Id. at 615 n. 48.

On October 3, 1994, the Rosebud Sioux Tribe brought suit in

17

federal district court against the South Dakota Secretary of Revenue for declaratory and injunctive relief against the imposition of state motor vehicle excise taxes and registration fees on Indians residing on the reservation. The case was assigned to the same judge before whom the Cheyenne River action was pending. The Secretary filed a motion to dismiss, and the tribe moved for a preliminary injunction.

On February 23, 1995, the same day that judgment was entered in the Cheyenne River case, the district court held a hearing on the motions in the Rosebud case. On May 23, 1995 it issued an opinion and order denying the Secretary's motion to dismiss, partially granting and partially denying the tribe's request for a preliminary injunction, and transferring the case to another judge. The opinion and order was short, and the court did not make detailed findings or discuss the basis for its disposition.

The district court's opinion recognized that the issues were similar to those raised in the Cheyenne River case. It granted a preliminary injunction against the collection of the motor vehicle registration fee from tribal members who drive only within the undiminished portion of the Rosebud reservation, but denied the tribe's motion in all other respects. It did not specifically enjoin the collection of the excise tax from tribal members living on the reservation, and the tribe filed this interlocutory appeal from that partial denial of its motion.[16]

The Rosebud tribe argues that the reasoning in the Cheyenne River case should apply to Indians residing on the Rosebud reservation and that the district court erred by failing to enter an injunction against the collection of excise taxes. The tribe

---

[16]At the time the case was argued on appeal, there was no indication that the case had proceeded any further in district court. The Secretary has yet to file an answer to the complaint or to assert any defenses.

argues that the order is inconsistent with the Cheyenne River judgment because it did not enjoin the state from continuing to collect excise taxes from members of the Rosebud tribe living on the reservation. The Secretary responds that the district court did not abuse its discretion when it partially denied the motion for a preliminary injunction and that the merits of the underlying action are not an issue on appeal.

The issue on this interlocutory appeal is whether the district court abused its discretion or committed an error of law.[17] See Dakota Indus., Inc. v. Dakota Sportswear, Inc., 988 F.2d 61, 63 (8th Cir. 1993). Although the order would be easier to review if it contained more detailed findings and reasoning, it appears that the earlier ruling in the Cheyenne River case was a major factor in the court's thinking. The same judge had entered a declaratory judgment in that case three months before, holding that South Dakota could not impose its motor vehicle excise tax on tribal members living on the reservation. In its opinion in that case, the district court denied injunctive relief since there was "no reason to believe the defendants will not comply with the requirements of this decision." Implicit in its Rosebud ruling is a similar assumption that the state was complying with the requirements of the Cheyenne River decision and had stopped collecting excise taxes from tribal members living on reservations. Injunctive relief is unnecessary where there is no showing of irreparable harm, and nothing in the record suggests that South Dakota continues to collect the excise tax from tribal members residing on Indian reservations. The tribe has not shown that the grant of only partial relief was an abuse of discretion or clearly erroneous.

---

[17]The Rosebud tribe also seeks entry of judgment in its favor on the excise tax issue, but the only issues before us on this interlocutory appeal relate to the injunction.

III.

In conclusion, the judgment entered in the Cheyenne River case is affirmed in part and reversed in part and remanded for consideration of the remaining damages issues. The order granting partial injunctive relief in the Rosebud case is affirmed.

ROSS, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority opinion to the extent that it concludes the State of South Dakota has the authority to impose an annual motor vehicle registration fee on Native Americans who live within the boundaries of a reservation. S.D. Codified Laws Ann. § 32-5-5. I dissent, however, with respect to the majority's conclusion that the State lacks the authority to impose the motor vehicle excise tax set forth in S.D. Codified Laws Ann. § 32-5B-1. In my opinion, the excise tax is indistinguishable from a sales tax levied on the sale of motor vehicles, and as such is a valid state tax on a non-reservation transaction. I also dissent from the majority's determination that the State of South Dakota must refund the taxes previously paid.

The South Dakota motor vehicle excise tax is a one-time tax based on the purchase price of a motor vehicle, and is collected by the county when application is made for a South Dakota motor vehicle title. S.D. Codified Laws Ann. § 32-5B-10. It is clear that all of the sales occur outside the reservation. Although the majority attempts to distinguish the excise tax from a sales tax based on the fact that the excise tax is collected at the time of registration by a government employee, as opposed to at the time of sale by the seller, the excise tax and its method of collection are virtually identical to the taxes imposed upon the disposition of motor vehicles by every other state within our circuit. In all cases, the taxes operate in a similar fashion, yet are given various labels. While each of the seven states within our circuit

20

levy similar taxes, I will discuss only those five states, including South Dakota, that also have a reservation within their borders.[18]

The State of Nebraska imposes a one-time "sales" tax, based on the purchase price of the motor vehicle. Neb. Rev. Stat. § 77-2703(1)(i). Although called a "sales" tax, the tax is not collected by the retailer at the time of the sales transaction, as is the case with retail sales in general. Id. § 77-2703(1)(a). Instead, the motor vehicle sales tax is collected by a county official at the time the vehicle is registered.

The State of North Dakota imposes a one-time "excise" tax based on the purchase price of the motor vehicle. N.D. Cent. Code § 57-40.3-02. Again, the tax is collected by the director of the department of transportation at the time of vehicle registration. Id. § 57-40.3-12. Because of the imposition of the motor vehicle excise tax, the sale of motor vehicles is specifically exempted from North Dakota's sales tax. Id. § 57-39.2-04(13).

The State of Iowa calls its one-time tax upon the sale of motor vehicles a "use" tax, Iowa Code Ann. § 423.7, even on the in-state purchases of motor vehicles. The tax is collected by the county treasurer at the time of vehicle registration. Id. § 423.7. Because of the imposition of this use tax, the sale of motor vehicles is specifically exempted from Iowa's sales tax. Id.

---

[18]Although Arkansas and Missouri do not have Indian reservations within their borders, I note that both of these states impose and collect sales taxes on the disposition of motor vehicles in a manner identical to that of their sister states. The State of Arkansas imposes a "gross receipts tax" on the sale of motor vehicles. Ark. Code Ann. § 26-52-510. This tax is "paid by the consumer to the Director of the Department of Finance and Administration instead of being collected by the dealer or seller, . . . at the time of registration." Id. § 26-52-510(a)(1)(A). Similarly, the State of Missouri imposes a "sales" tax upon the sale of a motor vehicle. The tax is not collected by the seller but by the state department of revenue at the time of registration. Mo. Rev. Stat. §§ 144.069, 144.070.

§ 422.45(4).

Finally, the State of Minnesota imposes a one-time tax called a "sales tax on motor vehicles." Minn. Stat. Ann. § 297B.02. The tax is based on the purchase price of the motor vehicle and is collected by the motor vehicle registrar, not by the seller at the time of sale. Id. § 297B.11. As with the other states in our circuit, Minnesota has reciprocity with other states in the form of a use tax, applicable, in part, to out-of-state purchases. Id. § 297B.08. Again, because of the tax imposed under § 297B.02, the sale of motor vehicles is specifically exempted from the general sales taxes levied under § 297A. Id. § 297B.13. A particularly interesting point to note regarding Minnesota's motor vehicle tax, is that prior to 1994, what is now denominated a "sales tax on motor vehicles" was labeled a "motor vehicle excise tax." The 1994 amendment modified only the label ascribed to the tax, leaving the taxing scheme otherwise unchanged.

The majority attempts to distinguish the taxing scheme found to be valid in Tunica-Biloxi Tribe v. Louisiana, 964 F.2d 1536 (5th Cir. 1992), noting as significant that "Tunica involved a Louisiana tax on the 'sale at retail' of any item of property within the state." Ibid. at 9-10. Regardless of the label given to the tax by the Louisiana legislature, however, Louisiana's taxing scheme is virtually identical to every other motor vehicle taxing scheme within our circuit. Relying exclusively on form rather than substance, the majority overlooks the fact that Louisiana sales tax on motor vehicles is collected, not by the seller at the time of the sale, but by the "vehicle commissioner as the agent of the collector of revenue at the time of application for a certificate of title or vehicle registration license." La. Rev. Stat. Ann. § 47:303B(1).

The majority's attempt to distinguish the Louisiana tax from the South Dakota tax is simply unavailing. The majority's only

22

noted distinction between the two taxes is that "[p]urchasers from outside Louisiana could also be subject to the sales tax unlike the South Dakota tax which is not applied to out-of-state purchasers." Ibid. at 10. This is a distinction without basis. Both the South Dakota and the Louisiana taxes are identical in that neither differentiates between resident or non-resident purchasers in the imposition of their respective taxes. Instead, both resident and non-resident purchasers must pay the tax at the time the vehicle is registered in either South Dakota or Louisiana, unless the purchaser can show that the tax has been paid to another state. This is simply the use tax component of a typical sales tax scheme and in no way detracts from its characterization as a sales tax. But for the label attributed to the taxes, Tunica is indistinguishable from the case now before us.

I also disagree with the majority that the South Dakota excise tax resembles the personal property taxes found to be invalid in Oklahoma Tax Comm'n v. Sac and Fox Nation, 508 U.S. 114 (1993); Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134 (1980); and Moe v. Confederated Salish and Kootenai Tribes, 425 U.S. 463 (1976). In both Colville and Moe, the court invalidated the imposition of taxes assessed annually at a percentage of market value of the vehicles. Rejecting the State of Washington's attempt to exalt form over substance, the Court noted that "the only difference between the taxes [in Colville] and the one struck down in Moe is that [the former] are called excise taxes and imposed for the privilege of using the vehicle in the State, while the Montana tax was labeled a personal property tax." Colville, 447 U.S. at 163. The important distinction between the taxes in Colville and Moe and the South Dakota excise tax, is that the taxes in Colville and Moe were annual taxes contingent upon the continued ownership of a motor vehicle. In sharp contrast, the tax at issue here is a one-time tax triggered upon the disposition of a motor vehicle. Colville and Moe simply are not controlling in the present case.

23

Sac and Fox is also distinguishable from the case now before us. The Supreme Court noted as significant several times throughout its discussion that the excise tax at issue in Sac and Fox was paid "in addition to the state sales tax,"[19] 508 U.S. at 119, 126, 127. Accordingly, the Court rejected the state's argument that the excise tax resembled a sales tax on transactions occurring outside Indian country. Id. at 126. Just the opposite is true here, where South Dakota law specifically states that the excise tax "shall be in lieu of any tax levied . . . on the sales of such vehicles." S.D. Codified Laws Ann. § 32-5B-1. Unlike Sac and Fox, the South Dakota motor vehicle excise tax is meant to be in lieu of the state's sales tax, not to augment it.

In my view, the majority relies upon distinctions without substance in concluding that the excise tax is not the equivalent of a sales tax. First, the majority finds significant the fact that the tax is not collected by the automobile dealer at the time of the sale, but instead is collected by the county treasurer at the time application is made for a South Dakota motor vehicle title. As previously stated, however, this procedure in tax collection is the same procedure used by all of the states within our circuit, including those that call the tax a "sales" tax.

Second, the majority makes much of the fact that "the tax does not apply to all motor vehicle sales in the state, but only to those resulting in ownership by a South Dakota resident," and "[c]onversely, the excise tax does apply to vehicles purchased out of state by South Dakota residents." Ibid. at 9. What the majority describes, however, is simply the complementary use tax element of a retail sales tax scheme. See, e.g., La. Rev. Stat. Ann. § 47:303A(3); Minn. Stat. Ann. §§ 297A.14(1), (2), 297B.08; Neb. Rev. Stat. § 77-2703(2). The existence of a use tax within

_____

[19]Oklahoma's "sales" tax levied on motor vehicles was not challenged in Sac and Fox.

24

the state's taxing scheme does not nullify, or in any way alter, the nature of its sales tax.

South Dakota's excise tax is the equivalent of a sales tax on motor vehicles. The fact that the tax is applied only to motor vehicles and not the general sale of personal property does not alter the substance of the tax in any way. My concern with the holding adopted by the majority today is the far-reaching ramifications this decision is sure to have on the taxing schemes of other states within our circuit, and conceivably in other circuits as well. Each of the remaining four states within our circuit, which also have Indian reservations within their boundaries, impose motor vehicle taxes virtually identical to that struck down by our court today. As with South Dakota, the remaining four states impose a one-time tax; based on the purchase price of the motor vehicle; imposed in lieu of the general retail sales tax; collected not by the retailer at the time of sale, but by a county official at the time of registration; and have complementary use tax provisions. Two of the four states now call their one-time tax a "sales" tax, although identical in all other respects to the "use" or "excise" taxes of their sister states. The question is whether this difference in nomenclature will be sufficient to withstand our court's scrutiny?

By failing to recognize the similarities between Louisiana and South Dakota's taxing schemes, the majority now creates a split among the circuits with regard to the validity of taxing the off-reservation sales of motor vehicles. Further, by failing to recognize the distinct method of collecting motor vehicle sales taxes, as opposed to other retail sales taxes, by every state in our circuit and possibly the majority of states across this country, our court today takes a step toward a blanket invalidation of sales taxes on the off-reservation purchases of motor vehicles. This clearly intrudes upon the Supreme Court's affirmation that "Indians going beyond reservation boundaries have generally been

25

held subject to non-discriminatory state law otherwise applicable to all citizens of the State," including its state tax laws.  <u>Mescalero Apache Tribe v. Jones</u>, 411 U.S. 145, 148-49 (1973).

Because it is my opinion that the South Dakota excise tax functions as a valid sales tax of off-reservation transactions, I would uphold S.D. Codified Laws Ann. § 32-5B-1.  Accordingly, I respectfully dissent from the majority opinion to the extent that it concludes otherwise.  I note that the other states within our circuit may wish to seek leave to file amicus briefs in the event a petition for rehearing is requested and granted in this case.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

26