**IT IS FURTHER ORDERED** that First U.S.A.'s motion to strike affidavits [# 98] is denied.

**STANDING ROCK SIOUX TRIBE, Plaintiff,**

and

**United States of America, on behalf of the Standing Rock Sioux Tribe and Its Members, Plaintiff–Intervener,**

v.

**William J. JANKLOW, Governor of South Dakota; et al., Defendants.**

**United States of America, on behalf of the Lower Brule Sioux, Yankton Sioux, Sisseton Wahpeton Sioux, Flandreau Santee Sioux, Crow Creek Sioux, and Oglala Sioux Tribes and Their Respective Members, Plaintiff,**

v.

**State of South Dakota, Defendant.**

No. Civ97–1015.

United States District Court, D. South Dakota, Northern Division.

March 2, 2000.

Terry L. Pechota, Viken, Viken, Pechota, Leach & Dewell, Rapid City, SD, William R. Perry, Anne D. Noto, Sonosky, Chambers, Sachse & Endreson, Washington, DC, for plaintiffs.

Cheryl Schrempp Dupris, U.S. Attorney's Office, Pierre, SD, Lois J. Schiffer, U.S. Department of Justice Environmental Defense Section, Washington, DC, Charles Jakosa, Environmental & Natural Resources Division Indian Resources Section U.S. Department of Justice Washington, DC, for plaintiff-intervenor.

John P. Guhin, Lawrence E. Long, Charles D. McGuigan, Attorney General's Office, Pierre, SD, Andrew Lee Fergel, Hughes County State's Attorney's Office, Pierre, SD, Steven L. Aberle, McIntosh, SD, for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

KORNMANN, District Judge.

[¶ 1] Pending before the Court in this consolidated action are Standing Rock Sioux Tribe's motion for partial summary judgment (Doc. 53), United States' motion for partial summary judgment (Doc. 57), and the defendants' motion for relief from injunctions (Doc. 60). The motions have been fully briefed and the Court will decide the motions based upon the record herein.

## BACKGROUND

[¶ 2] The Standing Rock Sioux Tribe ("the Tribe") filed CIV 97–1015 in 1997 to challenge the State of South Dakota's ("State") authority to continue to collect the motor vehicle excise tax imposed by SDCL § 32–5B–1 [1] ("the excise tax") from tribal members residing on the Standing Rock Sioux Indian Reservation ("the Reservation") and to recover excise taxes unlawfully collected from its members by the defendants. The United States sought to intervene on behalf of the Tribe and its members on November 12, 1998 (Doc. 29). The Court granted the United States' motion to intervene in CIV 97–1015. On the same date the United States filed a motion to intervene in CIV 97–1015, the United States filed a separate action, CIV 98–1037, on behalf of the Lower Brule Sioux, Yankton Sioux [2], Sisseton–Wahpeton Sioux, Flandreau Santee Sioux, Crow Creek Sioux and Oglala Sioux Tribes and their respective members, seeking declaratory relief, injunctive relief and monetary damages as a result of the State's unlawful imposition and collection of the excise tax from tribal members residing in Indian country. In February 1999, the Court consolidated CIV 97–1015 with CIV 98–1037.

[¶ 3] Prior to the filing of CIV 97–1015 and CIV 98–1037, the excise tax imposed by SDCL § 32–5B–1 was declared invalid by this Court, the Honorable John B. Jones, in *United States on behalf of Cheyenne River Sioux Tribe v. South Dakota*, CIV 92–3035 (D.S.D.) (Memorandum Opinion and Order, Doc. 171, February 21, 1995).[3] In January 1997, the United

---

1. SDCL § 32–5B–1 (1998) provides as follows:

 **Imposition of tax—Rate—Failure to pay as misdemeanor.** In addition to all other license and registration fees for the use of the highways, a person shall pay an excise tax at the rate of three percent on the purchase price of any motor vehicle, as defined by § 32–3–1, purchased or acquired for use on the streets and highways of this state and required to be registered under the laws of this state. This tax shall be in lieu of any tax levied by chapters 10–45 and 10–46 on the sales of such vehicles. Failure to pay the full amount of excise tax is a Class I misdemeanor.

2. The Supreme Court held in 1998 that the Yankton Sioux Reservation was diminished by land ceded to the United States under an 1892 agreement and ratified by Congress in 1894. *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 358, 118 S.Ct. 789, 139 L.Ed.2d 773 (1998). The Eighth Circuit thereafter held that "the Yankton Sioux Reservation has not been disestablished, but that it has been further diminished by the loss of those lands originally allotted to tribal members which have passed out of Indian hands. These lands are not part of the Yankton Sioux Reservation and are no longer Indian country within the meaning of 18 U.S.C. § 1151." *Yankton Sioux Tribe v. Gaffey*, 188 F.3d 1010, 1030 (8th Cir.1999). The Eighth Circuit remanded the case to the district court to "make any necessary findings relative to the status of Indian lands which are held in trust." *Id.* Therefore, it is unclear at this time exactly which land on the Yankton Sioux Reservation qualifies as Indian country under 18 U.S.C. § 1151.

3. The Cheyenne River Sioux Tribe also challenged the imposition of the state annual motor vehicle registration fee on Indians residing on the reservation pursuant to SDCL § 32–5–5. Judge Jones concluded the registration fee was a nondiscriminatory fee that was lawfully collected from tribal members residing on the reservation who chose to purchase state license plates. The Eighth Circuit affirmed Judge Jones' ruling regarding the registration fee. *Cheyenne*, 105 F.3d at 1559. Imposition of the state annual motor vehicle registration fee is not at issue in the present lawsuit or in the motions pending before the Court.

States Court of Appeals for the Eighth Circuit affirmed Judge Jones' holding that the State lacked jurisdiction to impose the excise tax on members of the Cheyenne River Sioux Tribe residing on the Cheyenne River Sioux Indian Reservation. *United States on behalf of the Cheyenne River Sioux Tribe v. South Dakota*, 105 F.3d 1552, 1556–58 (8th Cir.1997), *cert. denied*, 522 U.S. 981, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997) (*"Cheyenne River"*). The Eighth Circuit held that a tribal member's on-reservation activities are immune from state taxation in the absence of congressional authorization and Congress has not specifically authorized the taxation of a tribal member's personal property. *Id.* Judge Jones denied Cheyenne River's request for monetary damages to compensate for past payments of the excise tax by tribal members in CIV 92–3035, finding that previous cases addressing state taxation of motor vehicles were not applied retroactively. (CIV 92–3035, Doc. 171 at 10–11.) The Eighth Circuit reversed Judge Jones' denial of the request for monetary damages, holding that damages were not necessarily barred. *Cheyenne River*, 105 F.3d at 1561. In reaching this conclusion, the Eighth Circuit recognized that a refund of state taxes paid under duress is due if the state tax is declared to be invalid either " because ... it [is] beyond the State's power to impose' or 'because the taxpayers were absolutely immune from the tax.' " *Id.* at 1560. The case was remanded to the district court with the direction that the district court "determine whether damages should be awarded and, if so, in what amount." Following remand, Judge Jones transferred to this Court for disposition the *Cheyenne River* case, CIV 92–3035, and a related case, *Rosebud Sioux Tribe v. Johnson*, CIV 94–3039 (D.S.D.), challenging the same excise tax imposed against members of the Rosebud Sioux Tribe residing on the Rosebud Sioux Reservation, which was consolidated with *Cheyenne River* on appeal.

[¶ 4] In the *Rosebud* case, the Rosebud Sioux Tribe sought declaratory and injunctive relief against the imposition of the excise tax[4] on Indians residing on the Rosebud Sioux Reservation. Judge Jones did not specifically enjoin the State from collecting the excise tax from tribal members living on the reservation in the *Rosebud* case. The Eighth Circuit affirmed the denial of injunctive relief stating that:

> In its opinion in [the Cheyenne River Sioux Tribe] case, the district court denied injunctive relief since there was "no reason to believe the defendants will not comply with the requirements of this decision." Implicit in [the district court's] Rosebud ruling is a similar assumption that the state was complying with the requirements of the Cheyenne River decision and had stopped collecting excise taxes from tribal members living on reservations. Injunctive relief is unnecessary where there is no showing of irreparable harm, and nothing in the record suggests that South Dakota continues to collect the excise taxes from tribal members residing on Indian reservations.

*Cheyenne River*, 105 F.3d at 1562. Contrary to Judge Jones' and the Eighth Circuit's very reasonable assumptions, South Dakota continued to collect excise taxes from tribal members residing on every reservation in South Dakota except the Cheyenne River Sioux Indian Reservation following Judge Jones' February 1995 ruling in CIV 92–3035 and his May 1995 ruling in CIV 94–3039. Despite Judge Jones' May 23, 1995, ruling in the Rosebud case that it was unlawful to collect the excise tax from members of the Rosebud Sioux Tribe residing on the Rosebud Sioux Reservation, the State continued to collect excise taxes under SDCL 32–5B–1 from members of the Rosebud Sioux Tribe re-

---

**4.** The Rosebud Sioux Tribe also challenged the imposition of the state annual motor vehicle registration fee under SDCL § 32–5–5. As noted above, the registration fee is not being challenged in the present lawsuit.

siding within the "closed" portion of such reservation from May 23, 1995, until March 12, 1997. Following the February 21, 1995, issuance of Judge Jones' decision in *Cheyenne River,* CIV 92–3035, the State took the rather outrageous position in letters to county treasurers that *Cheyenne* "is not good law" (a position from which the State later retreated after this Court questioned such tactics) and informed the county treasurers to continue collecting the excise tax from tribal members living on reservations, other than the Cheyenne River Reservation. The State refused the request of the Tribe in April of 1997 to exempt its members residing on the reservation from paying the excise tax. Instead, the State implemented a system on the Reservation for payment of the excise tax under protest, to be followed by a possible refund at a later time. The Tribe then brought the present lawsuit to enjoin the defendants from continuing to collect the excise tax and seeking a refund of the excise taxes paid in the past by tribal members residing on the Reservation.

[¶ 5] On May 27, 1997, the Court entered a preliminary injunction enjoining defendants from collecting the excise tax from tribal members residing on the Reservation (Order Granting Motion for Preliminary Injunction, CIV 97–1015, Doc. 12). In November of 1998, when the United States sought to intervene in CIV 97–1015 and filed CIV 98–1037 on behalf of the members of the remaining tribes in South Dakota, the United States sought preliminary injunctions in both cases. In the motions for preliminary injunctions, the United States alleged that the State had ceased collecting the excise tax from tribal members living on their reservations but continued to collect the tax from tribal members living within "Indian country" as defined in 18 U.S.C. § 1151(b) and (c). The United States then acknowledged that the prior preliminary injunction in CIV 97–1015 issued on May 27, 1997, adequately protected all Standing Rock tribal members. In February of 1999, CIV 97–1015 and CIV 98–1037 were consolidated. On March 1, 1999, the Court enjoined the

defendants from collecting the excise tax imposed pursuant to SDCL § 32–5B–1, et seq., from tribal members residing in Indian country as defined in 18 U.S.C. § 1151, holding that the collection of the excise tax from those tribal members under the State's "protest system" violated treaty protected rights.

[¶ 6] The State imposes the excise tax pursuant to SDCL § 32–5B–1. Failure to pay the excise tax is a Class I misdemeanor. Under South Dakota law, a Class 1 misdemeanor is punishable by a maximum of one year imprisonment in a county jail, or a fine of $ 1,000, or both. SDCL § 22–6–2(1). Except as provided by statutes not relevant to this case, the title for a motor vehicle may not be issued or transferred unless the excise tax is paid. SDCL § 32–5B–14.

[¶ 7] In its motion for partial summary judgment the Tribe requests that the Court issue an order: (1) declaring that the defendants may not lawfully collect the excise tax from members of the Tribe residing on the Standing Rock Sioux Indian Reservation; (2) permanently enjoining the defendants from seeking to collect tax from members of the Tribe residing on the Reservation; and (3) declaring that the United States is entitled to recover damages in the amount of taxes paid plus interest.

[¶ 8] The United States filed a similar motion for summary judgment requesting that the Court order: (1) that the State is obligated to reimburse individual members of the Tribes who have previously paid the unlawful excise tax while they resided in Indian country; and (2) that the preliminary injunction, prohibiting the State from collecting the excise tax from members of the Tribes who reside in Indian country, be made permanent.

[¶ 9] In their brief resisting the motions for partial summary judgment, the defendants do not dispute that the excise tax cannot be collected from tribal members of the Standing Rock, Lower Brule, Crow Creek and Oglala Sioux tribes who reside

within the boundaries of their respective reservations at the time the excise tax is due. Defendants contend that if a permanent injunction is issued, it should be limited to enjoining them from collecting the excise tax from those tribal members residing on allotments or within dependent Indian communities which are under the governance of the tribal member's tribe. Defendants further argue that if a tribe required its members to pay the excise tax by requiring all members to have state motor vehicle plates (which cannot be obtained without registering the vehicle and paying the excise tax), no refund should be allowed. Defendants contend the three-year statute of limitations in SDCL § 10–59–19 should govern any claim for refund of the excise tax paid by tribal members, which they contend would be based upon the date the United States instituted suit seeking a refund on behalf of tribal members, i.e. November of 1998. Thus, the defendants conclude the United States cannot claim refunds for tribal members who paid the excise tax prior to November of 1995. Material facts are in dispute and summary judgment is not appropriate, according to the defendants, because each individual refund claim will require a factual determination. As to each tribal member's refund claim, defendants contend the United States must produce the following information: (1) name of tribal member; (2) proof that the claimant was an enrolled member of the tribe on the date of the transaction in question; (3) date of payment of the excise tax; (4) amount of excise tax paid; (5) description of motor vehicle sufficient to identify it; (6) residence of tribal member on the date the excise tax was paid; and (7) status of tribal member's residence on Indian country under 18 U.S.C. § 1151 on the date the excise tax was paid. In addition, defendants assert the Eleventh Amendment bars all relief requested by the Standing Rock Sioux Tribe. However, defendants acknowledge that the claims asserted by the United States on behalf of Indian tribes or their members are not barred by the Eleventh Amendment.

[¶ 10] The defendants filed a motion, pursuant to Fed.R.Civ.P. 60(b)(5) and (6), seeking modification of or relief from the preliminary injunctions entered on May 27, 1997, in CIV 97–101 [5] (enjoining collection of the excise tax on the Standing Rock Sioux Reservation) and on March 1, 1999, in CIV 98–1037 5 (enjoining collection of the excise tax in Indian country). (Doc. 60.) The basis of the defendants' motion is a new development, namely the adoption of administrative rules by the South Dakota Department of Revenue, which the defendants claim impose "upon tribal members residing in Indian country *only* that amount of [excise] tax which represents 'actual off-reservation use' of the tribal member-owned motor vehicle." (defendants' brief, Doc. 61 at 7–8). Defendants claim the administrative rules provide a partial exemption from the excise tax to tribal members residing in Indian country and that the excise tax, as modified by the administrative rules, is lawful under the Supreme Court's decisions in *Oklahoma Tax Comm'n v. Sac and Fox Nation,* 508 U.S. 114, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993) (*"Sac and Fox"*), *Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) (*"Colville"*), and *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). In their reply brief, the defendants argue that a property tax such as the excise tax at issue in this case may lawfully be prorated between exempt and non-exempt uses pursuant to South Dakota law and the statements by the Supreme Court in the above three cases regarding a "tailored" tax. Defendants contend such a proration of the excise tax does not violate the Equal

---

**5.** Defendants do not seek to lift the injunction in Charles Mix County, which involves the Yankton Sioux Tribe, because as noted above the litigation involving the Yankton Sioux Indian Reservation remains unresolved at this time. *See Yankton Sioux Tribe,* 188 F.3d at 1030.

Protection Clause. The State filed a similar motion and made similar arguments in the *Cheyenne River* case, CIV 92–3035 (Doc. 209).

[¶ 11] The Standing Rock Sioux Tribe and the United States oppose the defendants' motion for relief from injunctions, contending the State is attempting to circumvent the *Cheyenne River* ruling by transforming the excise tax into a highway use tax only as to Indians while, as to everyone else, it remains a property tax. The Tribe argues that the Department of Revenue does not have any authority to apportion a tax pursuant to a statute that has been held to be in violation of federal law as applied to tribal members residing on the reservation. The United States contends that the administrative rules did not change the character of the tax; rather, it remains an ownership tax on personal property owned by tribal members residing in Indian country. The Tribe and the United States also contend the administrative rules are arbitrary and capricious in that the "formula" used by the State was developed with no data on Indian highway use, either on or off Indian reservations. Both the Tribe and the United States contend that Fed.R.Civ.P. 60(b) does not authorize the relief sought by the State. As to the proration argument raised by defendants in the reply brief, Standing Rock counters that statutory authority, rather than administrative regulatory authority, is required to prorate taxes. The United States' response to defendants' proration argument is that the exemption from the excise tax is based upon federal law and, therefore, the State would need congressional approval to impose any portion of the excise tax on tribal members residing in Indian country.

## DECISION

A. *Motion for Partial Summary Judgment*

[¶ 12] Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, this Court views the evidence in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir.1992) (quoting Fed.R.Civ.P. 56(e)). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Arnold v. Columbia*, 197 F.3d 1217, 1220 (8th Cir.1999).

### 1. *United States' Motion*

[¶ 13] In its motion for partial summary judgment, the United States requests that the Court: (1) order the State to refund excise taxes paid by tribal members while they resided in Indian country, and (2) convert the preliminary injunctions, issued on May 27,1997, in CIV 97–1015 and on March 1, 1999, in CIV 98–1037, to permanent injunctions.

[¶ 14] The Eighth Circuit remanded the issue of damages to the district court in Cheyenne River, 105 F.3d at 1561. As stated by the Eighth Circuit, "[w]hen a state tax is declared to be invalid either 'because … it [is] beyond the State's power to impose' or 'because the taxpayers were absolutely immune from the tax,'" the State must "'undo the unlawful deprivation by refunding the tax previously paid under duress.'" *Cheyenne River*, 105 F.3d at 1560 (quoting *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 39, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990)). The Supreme Court recognized that if a taxpayer is absolutely immune from a tax, the

Fourteenth Amendment would be violated if the State were allowed to retain the taxes previously paid under duress without any obligation to refund such unlawfully collected taxes. *McKesson,* 496 U.S. at 39, 110 S.Ct. 2238 (citations omitted). A damage award is not barred by the Eleventh Amendment in this case because "[t]he Eleventh Amendment does not bar suits brought by the United States on behalf of Indian tribes or their members." *Cheyenne River,* 105 F.3d at 1560 (citing *United States v. Minnesota,* 270 U.S. 181, 195, 46 S.Ct. 298, 70 L.Ed. 539 (1926)). On the issue of refunds, the Eighth Circuit acknowledged that "[t]axes that are voluntarily paid because of a mistake of law cannot be recovered back, but taxes paid under duress or coercion are recoverable, and state refund procedures do not limit such recovery." *Id.* at 1561 (citations omitted).

[¶ 15] The excise tax at issue in this case was clearly paid "under duress or coercion" because the State did not provide a pre-deprivation procedure to challenge the tax and failure to pay the tax subjected tribal members to criminal penalties pursuant to SDCL §§ 32–5B–1 and 22–6–2(1). Therefore, the State must refund the excise taxes previously paid under duress by tribal members residing in Indian country, as further explained below.

[¶ 16] The Supreme Court has explained that its cases "make clear that a tribal member need not live on a formal reservation to be outside the State's taxing jurisdiction; it is enough that the member live in 'Indian country.' Congress has defined Indian country broadly to include formal and informal reservations, dependent Indian communities, and Indian allotments, whether restricted or held in trust by the United States. *See* 18 U.S.C. § 1151." *Sac and Fox,* 508 U.S. at 123, 113 S.Ct. 1985. Therefore, the State has and had no more jurisdiction to impose the excise tax on tribal members residing in Indian country than it does or did to impose the excise tax on tribal members residing on Indian reservations.

[¶ 17] The defendants contend the Eighth Circuit's decision in *Cheyenne River,* 105 F.3d at 1559–60, means that Indians who are not members of the Tribe on whose reservation they reside must pay the excise tax. The defendants believe the United States is, in effect, asking the Court to expand the Eighth Circuit's holding in *Cheyenne River* to give a blanket exemption to all Indians who are members of *any* tribe who reside in any Indian country in South Dakota. The United States responds that the exemption applies regardless of whether a tribal member's tribe governs the Indian country where the tribal member resides. This is a federal right, argues the United States, which is based upon the federal government's preemption of state taxing jurisdiction and the right exists regardless of which tribe governs the Indian land on which a tribal member resides. The Court agrees with the defendants on this issue. The Supreme Court held in *Colville* that the State of Washington could lawfully apply its sales and cigarette taxes on Indians resident on the reservation but not enrolled in the governing Tribe. 447 U.S. at 160–61, 100 S.Ct. 2069. In reaching this decision, the Supreme Court explained:

Federal statutes, even given the broadest reading to which they are reasonably susceptible, cannot be said to pre-empt Washington's power to impose its taxes on Indians not members of the Tribe ... [T]he mere fact that nonmembers resident on the reservation come within the definition of "Indian" for purposes of the Indian Reorganization Act of 1934, 48 Stat. 988, 25 U.S.C. § 479, does not demonstrate a congressional intent to exempt such Indians from state taxation. Nor would the imposition of Washington's tax on these purchasers contravene the principle of tribal self-government, for the simple reason that nonmembers are not constituents of the governing Tribe. For most practical purposes, those Indians stand on the same footing as non-Indians resident on the reservation. There is no evidence that non-

**1154**

members have a say in tribal affairs or significantly share in tribal disbursements. We find, therefore, that the State's interest in taxing these purchasers outweighs any tribal interest that may exist in preventing the State from imposing its taxes.

*Colville,* 447 U.S. at 160–61, 100 S.Ct. 2069. Although the issue of the State's power to tax nonmember Indians was not directly raised in *Cheyenne River,* the Eighth Circuit concluded that even if this issue had been properly presented the arguments made were not convincing. 105 F.3d at 1559. "[T]he tax immunity of reservation Indians is premised on the preemption of state laws by treaty and statute and informed by notions of tribal self government. These reasons underlying immunity do not have the same force as applied to Indians who are not members of the governing tribe." *Id.* (citing *Colville,* 447 U.S. at 160–61, 100 S.Ct. 2069). The Court concludes, based upon the discussion in *Colville* and *Cheyenne River,* that only tribal members residing in Indian country governed by the tribe of which they are members are exempt from the excise tax. Therefore, the Court will deny the United States' motion for partial summary judgment to the extent it seeks a declaration that the defendants are prohibited from collecting the excise tax from a tribal member residing in Indian country which is not governed by that member's tribe. For example, a member of the Standing Rock Sioux Tribe residing on the Oglala Sioux Indian Reservation is not entitled to claim the exemption from the excise tax. However, a member of the Standing Rock Sioux Tribe residing in Indian country governed by the Standing Rock Sioux Tribe is entitled to claim the exemption from the excise tax.

[¶ 18] The defendants contend the three-year statute of limitations in SDCL § 10–59–19 should govern any claim for refund of the excise tax paid by tribal members. The United States asserts the federal statute of limitations in 28 U.S.C. § 2415(a) governs the claims for refunds in

this action. The federal statute of limitations provides in relevant part that:

[E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues.... *Provided further,* That an action for money damages brought by the United States for or on behalf of a recognized tribe, band or group of American Indians shall not be barred unless the complaint is filed more than six years and ninety days after the right of action accrued.

28 U.S.C. § 2415(a).

[¶ 19] The Supreme Court recognized in *Oneida County v. Oneida Indian Nation,* 470 U.S. 226, 241–42, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985), that "[o]riginally enacted in 1966, [28 U.S.C. § 2415] provided a special limitations period of 6 years and 90 days for contract and tort suits for damages brought by the United States on behalf of Indians." In considering whether a state statute of limitations applied to a claim by the government for taxes illegally collected from Indians, the Supreme Court held that:

Nothing that the state can do will be allowed to destroy the federal right which is to be vindicated; but in defining the extent of that right its relation to the operation of state laws is relevant. The state will not be allowed to invade the immunities of Indians, no matter how skilful [sic] its legal manipulations. Nor are the federal courts restricted to the remedies available in state courts in enforcing such federal rights. Nor may the right to recover taxes illegally collected from Indians be unduly circumscribed by state law. Again, *state notions of laches and state statutes of limitations have no applicability to suits by the Government, whether on behalf of Indians or otherwise.* This is so because the immunity of the sovereign from these defenses is

historic. Unless expressly waived, it is implied in all federal enactments.

*Board of Comm'rs of Jackson County v. United States,* 308 U.S. 343, 350–51, 60 S.Ct. 285, 84 L.Ed. 313 (1939) (citations omitted and emphasis added). Given the express statute of limitations in 28 U.S.C. § 2415(a) and the Supreme Court's statement in *Jackson County,* namely that state statutes of limitations have no applicability to suits by the United States brought on behalf of Indians, the Court concludes that the six-year and ninety day limitations period in 28 U.S.C. § 2415(a) applies to the claims in this case. *See Oneida County,* 470 U.S. at 240–42, 105 S.Ct. 1245 (recognizing that a state statute of limitations may apply to a federal claim which is analogous to a state cause of action if no express federal statute of limitations governs the federal claim and the state statute of limitations would not be inconsistent with underlying federal policies); *United States v. Michigan,* 851 F.2d 803, 810 (6th Cir.1988) (holding that the statute of limitations provided by 28 U.S.C. § 2415, rather than the state statute of limitations, governed an action brought by the United States on behalf of federal credit unions seeking to recover as damages sales taxes improperly paid by the federal credit unions).

[¶ 20] As an express contract does not exist regarding the payment of the excise tax, the present action is governed by 28 U.S.C. § 2415(a) only if it involves an implied contract. In discussing the law of North Dakota, the Eighth Circuit explained that " '[u]njust enrichment is a broad equitable doctrine *which rests upon quasi or constructive contracts implied by law* to prevent a person from unjustly enriching [himself] at the expense of another.' " *JN Exploration & Production v. Western Gas Resources, Inc.,* 153 F.3d 906, 909–10 (8th Cir.1998) (quoting *In re Estate of Hill,* 492 N.W.2d 288, 295 (N.D. 1992)); *see also Michigan,* 851 F.2d at 810 (holding that "an action for unjust enrichment is based on a quasi-contract, which is synonymous with a 'contract implied in law.' "). South Dakota law similarly pro-

vides that in the absence of an express contract "[o]ne party may not be enriched at the expense of another. Equity creates a contract implied in law, or a quasi contract, to prevent the unjust enrichment." *Randall Stanley Architects, Inc. v. All Saints Community Corp.,* 555 N.W.2d 802, 805 (S.D.1996). In *Michigan,* the Sixth Circuit concluded the state sales taxes paid by federal credit unions were unconstitutional actions and resulted in the unjust enrichment of the State of Michigan. *Id.* Likewise, the State of South Dakota has been unjustly enriched by the payment of the excise tax from tribal members who were immune from state taxation. The Eleventh Circuit recognized that a quasi-contractual claim is governed by the six-year statute of limitations in 28 U.S.C. § 2415(a). *United States v. Moore,* 968 F.2d 1099, 1101 (11th Cir.1992). In discussing unjust enrichment and quasi-contract claims, the Seventh Circuit noted that when Congress enacted § 2415, unjust enrichment claims were clearly understood to be within the realm of "contract" claims and, thus, subject to the six-year statute of limitations in § 2415(a), rather than the "tort" claims subject to the three-year statute of limitations in § 2415(b). *Federal Deposit Ins. Corp. v. Bank One, Waukesha,* 881 F.2d 390, 392–93 (7th Cir. 1989). At least two federal district courts have likewise held that unjust enrichment claims are treated as quasi-contractual claims and are governed by the six-year statute of limitations in § 2415(a). *United States v. Stella Perez,* 956 F.Supp. 1046, 1050–51 (D.Puerto Rico 1997); *United States Small Bus. Admin. v. Wasson,* 865 F.Supp. 753, 754 (W.D.Okla.1994). The Court concludes, based upon the above authority, that this action involves a contract implied in law to which the statute of limitations in 28 U.S.C. § 2415(a) applies. The Court further concludes that this action is governed by the portion of section 2415 specifically relating to claims brought by the United States on behalf of Indians, which provides a six-year and ninety-day

limitations period, rather than the general six-year limitations period.

■ [¶ 21] Having ruled that the six-year and ninety-day statute of limitations provided in 28 U.S.C. § 2415(a) governs this action, the next question is from what date should the limitations period "look back" commence. The United States contends the beginning date for the limitations period as to tribal members residing on reservations should be six years prior to Judge Jones' February 21, 1995, order in *Cheyenne River*, CIV 92–3035, granting the United States' and Cheyenne River Sioux Tribe's motions for summary judgment declaring that the excise tax may not be collected from members of the Cheyenne River Sioux Tribe residing on the Cheyenne River Sioux Indian Reservation. As to the tribal members residing in Indian country but not residing on their tribe's reservation, the United States contends the beginning date for the period of limitations is six years prior to the filing of the complaint in CIV 98–1037, which occurred on November 12, 1998. The defendants contend, however, that the beginning date for the limitations period for all claims should be three years prior to the filing of the complaint in CIV 98–1037. The Court concludes that, under 28 U.S.C. § 2415, the six-year and ninety-day statute of limitations is measured from the date on which the complaint is filed by the United States. 28 U.S.C. § 2415(a) (stating that "... every action for money damages brought by the United States for or on behalf of a recognized tribe, band or group of American Indians shall not be barred unless the complaint is filed more than six years and ninety days after the right of action accrued."). Therefore, in CIV 98–1037, involving the Lower Brule Sioux, Yankton Sioux, Sisseton–Wahpeton Sioux, Flandreau Santee Sioux, Crow Creek Sioux and Oglala Sioux Tribes, the defendants should refund excise taxes paid, from August 14, 1992, to the date this order is filed, by members of these tribes who resided in Indian country, as defined in 18 U.S.C. § 1151, which was governed by their respective tribes at the time the excise tax

was paid. In CIV 97–1015, although the action was filed by the Standing Rock Sioux Tribe on May 15, 1997, the United States did not seek to intervene until November 12, 1998. The Court concludes that based upon the language in 28 U.S.C. § 2415(a) regarding actions "brought by the United States," the appropriate date from which the statute of limitations should be measured in CIV 97–1015 is the date on which the United States sought to intervene on behalf of the Standing Rock Sioux Tribe and its members residing in Indian country, which occurred on November 12, 1998. In CIV 97–1015, the defendants should, therefore, refund excise taxes paid from August 14, 1992, to the date this order is filed by members of the Standing Rock Sioux Tribe who resided in Indian country, as defined in 18 U.S.C. § 1151, which was governed by the Standing Rock Sioux Tribe at the time the excise tax was paid.

■ [¶ 22] In communications with the Court, the State agreed that tax refunds are paid with interest at the annual rate of 15 per cent pursuant to SDCL §§ 10–59–24 and 10–59–6 (*See* Doc. 77, letter to Court from defendants dated February 9, 1999). The State informed the Court that it has already provided refunds with interest at the annual rate of 15 per cent to tribal members who paid the excise tax on or after January 17, 1997, while residing on closed reservations (Doc. 77). The Court finds the imposition of interest on the refunds at issue in this case is appropriate and not in conflict with the Supreme Court's refusal in *Jackson County* to award interest to the taxpayer entitled to a refund in that case. In *Jackson County*, the Supreme Court found the county innocently collected taxes which it did not know were not properly the property of the county. 308 U.S. at 353, 60 S.Ct. 285. In this case, the State collected excise taxes from tribal members residing on reservations even after Judge Jones explicitly held in *Cheyenne River* that such taxes were unlawful. Moreover, the law of Kan-

sas evaluated in *Jackson County* expressly provided that a taxpayer could not recover interest from a county when taxes were wrongfully collected. 308 U.S. at 349, 60 S.Ct. 285. In contrast, South Dakota law expressly provides that interest may be recovered from the State if the overpayment of tax is not due to the taxpayer's error SDCL § 10–59–24.

■ [¶ 23] If a tribe required its members to pay the excise tax by requiring all members to have state motor vehicle plates (which cannot be obtained without registering the vehicle and paying the excise tax), the defendant's position is that those tribal members should not be allowed to claim a refund of the excise tax. Although it is not clear from the record whether any Tribe in South Dakota requires its members to pay the excise tax, defendants' argument is unavailing because congressional authorization is required for the State to impose its excise tax on tribal members residing in Indian country and Congress has not given any such authorization. *Cheyenne River*, 105 F.3d at 1558 (holding that "without congressional authorization" the State may not impose its motor vehicle excise tax).

■ [¶ 24] The defendants contend summary judgment should not be granted because each individual refund claim will require a factual determination. The United States responds that the issues related to each individual refund claim were not raised by it in the pending motions and that such issues are more appropriately handled during discovery. The United States' belief is that once the Court rules upon any limitations of the State's liability regarding refunds, the parties should be able to work together to ensure that the proper individual tribal members receive reimbursement. The Court agrees the United States is not seeking summary judgment as to each individual refund claim and that such issues should be handled by the parties during discovery. The United States seeks a ruling from the Court regarding the State's liability for refunds, from which the parties can determine which individual tribal members are entitled to refunds. The Court assumes that defendants have, in good faith, maintained and still retain all records necessary to determine the refunds. To be sure, the defendants have for many years had notice of these requested refunds.

[¶ 25] In conclusion, the Court will grant the United States' motion for partial summary judgment to the extent that the State of South Dakota is obligated to refund with interest the excise tax paid by individual members of the Tribes on whose behalf the United States is acting in CIV 97–1015 and CIV 98–1037 who paid the tax, from August 14, 1992, to the date this order is filed, while they resided in Indian country governed by their respective Tribes. The Court will also grant a permanent injunction prohibiting the State of South Dakota from collecting the excise tax from members of the Tribes who reside in Indian country governed by their respective Tribes at the time the excise tax is due.

*2. Standing Rock Sioux Tribe's Motion*

[¶ 26] The Tribe requests that the Court declare and issue a permanent injunction to the effect that the defendants may not lawfully collect the excise tax from its members residing on the Reservation and declaring that the United States is entitled to recover damages in the amount of excises taxes paid plus interest. As explained above, the Court will declare and issue a permanent injunction in CIV 97–1015 which will prohibit the State from collecting the excise tax from members of the Tribe who reside in Indian country governed by the Tribe. The defendants argue that the Tribe is barred by the Eleventh Amendment from asserting any refund claim on behalf of its members or as a surrogate for the United States. Citing *Arizona v. California*, 460 U.S. 605, 614–15, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), the Tribe contends that because its claims are the same as the claims asserted by the

United States, the Eleventh Amendment does not bar the Tribe's claims.

■ [¶ 27] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Indian tribes are accorded the same status as a foreign sovereign. *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 781–82, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). The Supreme Court held, and the defendants do not dispute, that Eleventh Amendment immunity does not bar suits by the United States on behalf of Indian tribes or their members. *Id.* at 782–83, 111 S.Ct. 2578 (citing *United States v. Minnesota*, 270 U.S. 181, 195, 46 S.Ct. 298, 70 L.Ed. 539 (1926)). The Supreme Court found in *Arizona* that "the States' sovereign immunity protected by the Eleventh Amendment is not compromised" by allowing Indian tribes to participate in an adjudication of their water rights which was commenced by the United States where the tribes did not seek to bring new claims or issues against the States not raised by the United States. 460 U.S. at 614, 103 S.Ct. 1382. The Eighth Circuit held that the ruling in *Arizona* applied in a case where the initial action was brought by the tribe and the United States later intervened in the action. *Mille Lacs Band of Chippewa Indians v. Minnesota*, 124 F.3d 904, 913 (8th Cir.1997), *aff'd*, 526 U.S. 172, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999). Therefore, because the Tribe and the United States seek the same relief in CIV 97–1015, South Dakota's sovereign immunity is not compromised and the Eleventh Amendment does not bar this action by the Tribe. *Arizona*, 460 U.S. at 614, 103 S.Ct. 1382; *Mille Lacs*, 124 F.3d at 913. In light of the conclusion that this case is not barred by the Eleventh Amendment, the Court need not reach the defendants'

argument regarding the exception to Eleventh Amendment immunity provided in *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

[¶ 28] Other than the issue regarding the Eleventh Amendment, the Tribe's and the United States' motions for partial summary judgment raise essentially the same issues. The defendants submitted a single response to both motions. The Court addressed all of the issues raised by the Tribe, with the exception of the Eleventh Amendment issue, in addressing the United States' motion above. The Tribe's motion for partial summary judgment will be granted to the same extent as the Court set forth above in ruling on the United States' motion for partial summary judgment.

*B. Motion for Relief From Injunction*

■ [¶ 29] The defendants filed a motion seeking modification of or relief from the preliminary injunctions entered on May 27, 1997, in CIV 97–1015 (enjoining collection of the excise tax on the Standing Rock Sioux Reservation) and on March 1, 1999, in CIV 98–1037 [6] (enjoining collection of the excise tax in Indian country). (Doc. 60 .) Initially, the defendants asserted that relief from the preliminary injunction could be granted under either Fed. R.Civ.P. 60(b)(5) or (6). In their reply brief, defendants rely solely upon Rule 60(b)(5) as the appropriate rule under which to seek relief from a preliminary injunction. Rule 60(b)(5) provides: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." The Court

---

6. Defendants do not seek to lift the injunction in Charles Mix County, which involves the Yankton Sioux Tribe, because the litigation

involving the Yankton Sioux Reservation remains unresolved at this time. *See Yankton Sioux Tribe*, 188 F.3d at 1010.

concludes that Rule 60(b)(5) does not apply in this action because the Court has not issued a "final" judgment, order or proceeding. However, the Court has authority to modify a preliminary injunction. *See Omaha Indem. Co. v. Wining*, 949 F.2d 235, 239 (8th Cir.1991); *Movie Sys., Inc. v. Mad Minneapolis Audio Distrib.*, 717 F.2d 427, 430 (8th Cir.1983). "When considering whether to modify a preliminary injunction, 'a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law.'" *Omaha Indemnity*, 949 F.2d at 239 (quoting *Movie Systems*, 717 F.2d at 430).

[¶ 30] The defendants assert the law has changed because the rules adopted by the South Dakota Department of Revenue ("the Department") now make the excise tax "tailored" to non-Indian country use of tribal members' motor vehicles. *See* S.D.Admin.R. Chapter 64:48:01. One of the administrative rules provides in part:

> Any individual who is an enrolled member of an Indian tribe and resides on the member's reservation in South Dakota is partially exempt from payment of the motor vehicle excise tax imposed by SDCL chapter 32–5B. Any individual who is an enrolled member of an Indian tribe and resides on trust land controlled by the member's tribe or in a dependent Indian community controlled by the member's tribe is partially exempt from payment of the motor vehicle excise tax imposed by SDCL chapter 32–5B. The amount of exemption from payment of the motor vehicle excise tax imposed by SDCL chapter 32–5B is tailored to the amount of actual off-reservation use, off-trust land use, or off-dependent Indian community use of the motor vehicle.

S.D.Admin.R. § 64:48:01:01. The defendants cite language from two Supreme Court decisions in which the Court held that a motor vehicle tax similar to the South Dakota excise tax was unlawfully applied to tribal members wherein the Supreme Court stated, "[h]ad [the State] tai-

lored its tax to the amount of actual off-reservation use, or otherwise varied something more than mere nomenclature, this might be a different case. But it has not done so, and we decline to treat the case as if it had." *Colville*, 447 U.S. at 163–64, 100 S.Ct. 2069; *Sac and Fox*, 508 U.S. at 128, 113 S.Ct. 1985 (quoting *Colville*, 447 U.S. at 163–64, 100 S.Ct. 2069). The defendants contend that the excise tax as modified by the Department's rules complies with federal law because the excise tax is now "tailored to the amount of actual off-[Indian country] use" by tribal members. *Id.*

[¶ 31] In *Cheyenne River*, the Eighth Circuit held that "the State lacks jurisdiction to impose the excise tax on tribal members residing on the reservation" because "the tax essentially operates as a tax on the ownership of a motor vehicle." 105 F.3d at 1558. The South Dakota legislature has not changed the excise tax and it remains the same personal property tax the Eighth Circuit found unlawful in *Cheyenne River*. *Id.* The Department adopted rules in an attempt to circumvent the Eighth Circuit's ruling in *Cheyenne River*. The Department's "tailored" rules did not change the character of the excise tax; rather, the Department simply created a new method of computing the *amount* of excise tax owed by tribal members. Federal law has not changed since the Eighth Circuit issued its decision in *Cheyenne River*. Congress has not authorized the State to impose a motor vehicle ownership tax on tribal members residing in Indian country. *See Cheyenne River*, 105 F.3d at 1556 (stating that "Congress has not specifically authorized the taxation of a tribal member's personal property, and South Dakota thus lacks jurisdiction to impose such a tax.").

[¶ 32] The defendants argue that because South Dakota law allows a property tax to be prorated between exempt and non-exempt uses, the administrative rules lawfully prorate the excise tax between off-Indian country use and on-Indian country

use of motor vehicles by tribal members. Defendants also assert that the Supreme Court has authorized such proration of taxes in *Colville, Sac & Fox,* and *Moe.* The Court finds defendants' argument unavailing on this issue. Tribal members residing in Indian country governed by their respective tribes are exempt from the excise tax pursuant to federal law, rather than state law. Therefore, whether state law allows a proration as to tax exemptions granted under state law is not relevant to the exemptions at issue in this lawsuit. Moreover, the South Dakota Supreme Court has repeatedly held that a tax may be prorated only if express statutory authority exists for such a proration. *See Loyal Order of Moose Lodge No. 1137 v. Pennington County,* 566 N.W.2d 132, 134 (S.D.1997) (holding that "[a]ll property is subject to taxation unless expressly exempted by statute"); *Appeal of Sioux Valley Hosp. Ass'n,* 513 N.W.2d 562, 564 (1994) (same); *South Dakota Educ. Ass'n v. Dromey,* 85 S.D. 630, 188 N.W.2d 833 (1971) (same). The proration of the excise tax as adopted by the Department in its rules is not expressly authorized by statute and, therefore, does not appear to be proper under South Dakota law. Ultimately, the fundamental flaw with the excise tax at issue herein, as ruled by the Eighth Circuit, is that Congress has not authorized taxation of a tribal member's personal property by the State of South Dakota. *Cheyenne River,* 105 F.3d at 1556.

[¶ 33] In light of the above discussion, the Court need not reach the issue of whether the administrative rules are truly "tailored to the amount of actual off-[Indian country] use." *Colville,* 447 U.S. at 163–64, 100 S.Ct. 2069. The Court notes, however, that the rules appear to be based upon pure speculation by the Department as to the amount of miles tribal members would drive their motor vehicles outside of Indian country.

[¶ 34] The Court will not grant relief from the preliminary injunctions entered in CIV 97–1015 and CIV 98–1037 as requested by defendants. No change in the law or the facts exists which results in the injunction being inequitable. Rather, the Court will convert the preliminary injunction to a permanent injunction as set forth above in the discussion concerning the motions for partial summary judgment.

## ORDER

[¶ 35] Now, therefore,

[¶ 36] IT IS ORDERED:

1) The Standing Rock Sioux Tribe's motion for partial summary judgment, Doc. 53, and the United States's motion for partial summary judgment, Doc. 57, are granted to the extent that the defendants shall refund with interest all motor vehicle excise taxes paid pursuant to SDCL § 32–5B–1, from August 14, 1992, to the date this Order is signed, by members of the Standing Rock Sioux Tribe, Lower Brule Sioux Tribe, Yankton Sioux Tribe, Sisseton Wahpeton Sioux Tribe, Flandreau Santee Sioux Tribe, Crow Creek Sioux Tribe and Oglala Sioux Tribe who paid the excise tax while they resided in Indian country, as defined in 18 U.S.C. § 1151, which was governed by their respective tribes.

2) The motions for partial summary judgment, Docs. 53 and 57, are further granted to the extent that the defendants are permanently enjoined from collecting the motor vehicle excise tax imposed pursuant to SDCL § 32–5B–1, et seq., from members of the Standing Rock Sioux Tribe, the Lower Brule Sioux Tribe, the Yankton Sioux Tribe, the Sisseton Wahpeton Sioux Tribe, the Flandreau Santee Sioux Tribe, the Crow Creek Sioux Tribe and the Oglala Sioux Tribe who, at the time the excise tax is due, reside in Indian country, as defined in 18 U.S.C. § 1151, which is governed by their respective tribes. The motions, Docs. 53 and 57, are denied in all other respects.

3) The defendants' motion for relief from injunctions, Doc. 60, is denied.