[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17739
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-01350-AT


RYAN PATRICK NICHOLL,

Plaintiff-Appellant,

versus

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 7, 2017)

Before MARCUS, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Ryan Nicholl, proceeding *pro se*, appeals the dismissal of his complaint against the Board of Regents of the University System of Georgia ("Board") for violating the U.S. Constitution, the Georgia Constitution, federal antitrust laws, and state contract law by charging him for a university meal plan and denying his request to opt out of the meal plan program.  Nicholl raises two issues on appeal.  First, he argues that the district court erred by concluding that his claims were barred on immunity grounds.  Second, he contends that the court erroneously dismissed as futile his motion for leave to amend the complaint.  We address each of the issues below.

I.

Nicholl argues that the court erred by determining that the Board was an arm of the state entitled to sovereign immunity; by concluding that his antitrust claims, his contract claims, and his constitutional claims were barred by immunity; by denying his request for money damages; by not treating his complaint as an *in rem* action; and by permitting the clerk to enter judgment.  Each of Nicholl's arguments is addressed, in turn, below.

## A. <u>Arm of the state entitled to Eleventh Amendment immunity</u>

Nicholl contends that the Board is not a sovereign entity or an arm of the state entitled to sovereign immunity.

The grant or denial of a state's sovereign immunity defense is an issue of law subject to *de novo* review. *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1290 (11th Cir. 2003).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. While the Supreme Court has held that the Eleventh Amendment is not jurisdictional in the sense that courts must address the issue *sua sponte*, it has held that Eleventh Amendment immunity is in the nature of a jurisdictional bar. *Bouchard Transp. Co. v. Fla. Dep't of Envtl. Prot.*, 91 F.3d 1445, 1448 (11th Cir. 1996). Thus, Eleventh Amendment immunity is a threshold issue that should be decided at an early stage. *Id.*

The Eleventh Amendment prohibits federal courts from exercising jurisdiction over lawsuits against a state, except where the state has consented to be sued or waived its immunity, or where Congress has overridden the state's immunity. *Cross v. State of Ala.*, 49 F.3d 1490, 1502 (11th Cir. 1995).

Sovereign immunity under the Eleventh Amendment applies both to states and to those entities that are considered "arm[s] of the state." *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1520 (11th Cir. 1983). The Board is

considered a state entity that is an arm of the state of Georgia for purposes of the Eleventh Amendment, and, therefore, is entitled to sovereign immunity, unless waived. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 616-17 (2002) (addressing whether the Board had waived its Eleventh Amendment immunity in that particular case); *Stroud v. McIntosh*, 722 F.3d 1294, 1299 (11th Cir. 2013) (describing the defendant in *Lapides* as "the Board of Regents of the University System of Georgia (an arm of the state)"); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1301-02 (11th Cir. 2007) ("Nor has . . . the Board of Regents waived its Eleventh Amendment immunity.").

The district court did not err in concluding that the Board was an arm of the state entitled to Eleventh Amendment immunity. *See Lapides*, 535 U.S. at 616-17; *Stroud*, 722 F.3d at 1299; *Williams*, 477 F.3d at 1301-02. Furthermore, as discussed in parts B, C, D, and E, below, the court correctly determined that Nicholl's antitrust claims, contract claims, constitutional claims, and request for money damages were barred because the Board, as an arm of the state, was immune to such suits.

## B. Antitrust claims

Nicholl asserts that the court erred by concluding that his federal antitrust claims were barred by sovereign immunity.

4

The application of the state action doctrine is a question of law reviewed *de novo*. *F.T.C. v. Hosp. Bd. of Directors of Lee Cty.*, 38 F.3d 1184, 1187 (11th Cir. 1994).

"[N]either the Sherman Act nor the Clayton Act was intended to authorize restraint of governmental action." *Alabama Power Co. v. Alabama Elec. Co-op., Inc.*, 394 F.2d 672, 675 (5th Cir. 1968). Under the state action immunity doctrine, states are immune from federal antitrust law for their actions as sovereign. *Crosby v. Hosp. Auth. of Valdosta & Lowndes Cty.*, 93 F.3d 1515, 1521 (11th Cir. 1996); *see Parker v. Brown*, 317 U.S. 341 (1943). The doctrine is grounded in and derived from principles of federalism and state sovereignty. *Crosby*, 93 F.3d at 1521.

The state action immunity doctrine "does not apply *directly* to a state's political subdivisions because these subdivisions are not themselves sovereign." *Id.* (emphasis in original). A political subdivision is entitled to state action immunity if it acted pursuant to clearly articulated and affirmatively expressed state policy. *Id.*

In *Saenz v. Univ. Interscholastic League*, 487 F.2d 1026 (5th Cir. 1973), the former Fifth Circuit determined that the University Interscholastic League ("UIL"), which was part of the Extension Division of the University of Texas at Austin, was a governmental entity "outside the ambit of the Sherman Act." *Saenz*, 487 F.2d at

5

1027-28 (*citing Alabama Power*, 394 F.2d at 675).  Because the University of Texas at Austin was "inarguably a state agency or governmental body," the Fifth Circuit inquired into the extent to which the UIL was connected to the university in order to determine if it was "imbued with ample characteristics to warrant the . . . determination that the organization is an agency of the State of Texas." *Id.*  The Court concluded that the UIL was an "integral part" of the university and, thus, immune from suit under federal antitrust law.  *Id.* at 1028.  The Fifth Circuit further noted that this "shield of immunity, of course, is not limited to governmental agencies alone but extends as well to officers or agents of the State." *Id.*

The district court correctly determined that the Board was immune from Nicholl's claims that relied on federal antitrust law.  As an arm of the state, the Board is outside the ambit of Nicholl's Sherman Act and Clayton Act claims, and the court properly concluded that such claims were barred.  *See Saenz*, 487 F.2d at 1028.

## C. <u>Contract claims</u>

Nicholl argues that although Georgia only waived immunity from contract actions in state court, the Board never had sovereign immunity that needed to be waived for actions in federal court.  Even if the Eleventh Amendment did apply, Nicholl argues, the Board's ability to contract in its own name, rather than in

Georgia's name, makes it a distinct entity from the state and not an arm of the state for purposes of contract actions.

"Georgia has not waived its Eleventh Amendment immunity from suit in federal court for breach of contract claims." *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012). We explained in *Barnes*:

> The Georgia constitution waives the state's sovereign immunity for actions *ex contractu.* Ga. Const. art. I, § 2, ¶ IX(c). Similarly, the Georgia Code also waives the state's sovereign immunity for breach of contract claims. Ga. Code . . . § 50-21-1(a). But neither provision expressly consents to suits in federal court. . . .
> In fact, Georgia expressly retained its Eleventh Amendment immunity from such claims. Following the waiver of sovereign immunity in the Georgia constitution, a separate subsection provides that: "No waiver of sovereign immunity under this Paragraph shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution." Ga. Const. art. I, § 2, ¶ IX(f). Eleventh Amendment immunity is an immunity provided by the United States Constitution. Additionally, the waiver in the Georgia Code states that "venue with respect to any [breach of contract] action shall be proper in the Superior Court of Fulton County, Georgia." Ga. Code . . . § 50-21-1(b). . . . [A] state can consent to suit in its own courts without
>
> consenting to suit in federal court. And that is exactly what Georgia did when it enacted § 50-21-1.

*Id.* at 1308-09.

The court correctly concluded that Nicholl's contract claims were barred by Eleventh Amendment immunity. *See Barnes*, 669 F.3d at 1308-09. Georgia has not waived its sovereign immunity from suit in federal court for such claims, and,

thus, the proper forum for Nicholl's contract claims is in Georgia state court, not federal court. *See id.*

### D. Constitutional claims

Nicholl asserts that the court erred by categorizing his constitutional claims under a 42 U.S.C. § 1983 action. He argues that he has the right to contest the legality of the money that he was charged under his right to due process and right to petition the government for redress of grievances. He states that the Board has taken his money without any due process and for no reason, and it should not be able to claim sovereign immunity to prevent it from having to return the money. Nicholl further contends that a takings or due process claim should prevail over sovereign immunity since the Fourteenth Amendment was ratified after the Eleventh Amendment.

Section 1983 provides a remedy for the deprivation of federal civil rights by a person acting under color of state law. *See* 42 U.S.C. § 1983; *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). However, while "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits," unless the immunity is waived or overridden. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). "Congress has not abrogated states' immunity from

§ 1983 suits," nor has the Board waived its Eleventh Amendment immunity. *Williams*, 477 F.3d at 1301-02.

Under the *Ex Parte Young* doctrine, a suit requesting injunctive relief on a prospective basis for an ongoing constitutional violation against a state official in her official capacity is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment. *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011); *see Ex Parte Young*, 209 U.S. 123 (1908). However, the *Ex Parte Young* exception to sovereign immunity "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

A Fifth Amendment Takings Clause claim does not become ripe for review in federal court unless the state provides no procedure for obtaining just compensation. *Bickerstaff Clay Prod. Co. v. Harris Cty., Ga. By & Through Bd. of Comm'rs*, 89 F.3d 1481, 1490-91 (11th Cir. 1996) (*citing Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985)). Under Georgia law, such a procedure exists. *Id.*

Here, the district court correctly dismissed Nicholl's constitutional claims against the Board. In order to avoid Eleventh Amendment immunity for his alleged deprivations of civil liberties, Nicholl needed to seek injunctive relief against a state official in his or her official capacity, because the *Ex Parte Young*

9

exception does not apply to Nicholl's claims against the Board, which is an arm of the state. *See Puerto Rico Aqueduct*, 506 U.S. at 146; part A, *supra*. Inasmuch as Nicholl presented a Fifth Amendment takings claim, the claim was not ripe for review in federal court because Georgia offers a procedure for obtaining just compensation. *See Bickerstaff*, 89 F.3d at 1490-91.

### E. **Request for money damages**

Nicholl contends that money damages are not barred because if the court were to rule in his favor, the Board would merely be returning money that it never lawfully owned, and "recovered" money, as opposed to "taken" money, may be awarded as damages. Citing *Ward v. Bd. of Cty. Comm'rs of Love Cty., Okl.*, 253 U.S. 17 (1920), Nicholl asserts that when a political subdivision acquires money unlawfully, it remains obligated to return that money.

Under the Eleventh Amendment, states are immune from money damages in § 1983 suits. *Tuveson v. Fla. Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 732 (11th Cir. 1984). In *Ward*, the Supreme Court reversed the Oklahoma Supreme Court's refusal to award a refund for an unlawful tax that was levied by coercive means. *Ward*, 253 U.S. at 23-25. The county that levied the tax threatened to sell the lands of the claimants if the tax was not paid. *Id.* at 23.

The court correctly concluded that Nicholl could not recover money damages. Nicholl cannot not seek such damages through a § 1983 action, *see*

*Tuveson*, 734 F.2d at 732, and Nicholl's only other contention is that he could recover the money under *Ward*. However, unlike in *Ward*, Nicholl was not coerced into paying a tax by threat of losing the taxed property. *See Ward*, 253 U.S. at 23. Accordingly, *Ward* does not provide Nicholl with a vehicle to recover money damages from the Board.

## F. *In rem* jurisdiction

Nicholl argues that, even if sovereign immunity does apply, it does not block the court's *in rem* jurisdiction to decide the ownership of the money he was charged for the meal plans.

We generally do not consider arguments raised for the first time on appeal. *Narey v. Dean*, 32 F.3d 1521, 1526 (11th Cir. 1994). There are five exceptions in which we will consider an issue that was not first raised in the district courts: (1) the issue involves a pure question of law, and refusal to consider it would result in a miscarriage of justice; (2) the appellant raises an objection to an order that he had no opportunity to raise at the district court level; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; and (5) the issue presents significant questions of general impact or of great public concern. *Id.* at 1526-27.

Nicholl's argument regarding *in rem* jurisdiction of the court was not raised below in Nicholl's amended complaint, response to the motion to dismiss, or

11

motion to vacate or for leave to amend, and, thus, we decline to consider the argument. *See Narey*, 32 F.3d at 1526-27. To the extent that Nicholl argues that he could amend his complaint to an *in rem* action, his argument is discussed in issue 2, below.

## G. <u>Entry of judgment</u>

Nicholl argues that the court erred by permitting the clerk to enter the written judgment.

Federal Rule of Civil Procedure 58(b) addresses when the clerk may enter judgment without the court's direction and when the court's approval is required. Fed. R. Civ. P. 58(b). Rule 58(b)(1) states that the clerk must, without awaiting the court's direction, promptly prepare, sign, and enter the judgment when the court denies all relief. Fed. R. Civ. P. 58(b)(1)(C).

The court did not err by permitting the clerk to enter the judgment in Nicholl's case, as the court's order dismissing all of Nicholl's claims denied all relief to Nicholl. Hence, the clerk was required by the Federal Rules of Civil Procedure to prepare, sign, and enter the judgment without awaiting the court's direction. *See* Fed. R. Civ. P. 58(b)(1)(C).

II.

12

Nicholl argues that the court erred by denying his request for leave to amend the complaint, assuming that it was defective, because he could have "clearly correct[ed] the complaint . . . by altering the style of the action to an *in rem* or 'quiet title' action, even if sovereign immunity would otherwise bar the action."[1] He also asserts that it would not have been futile to amend the complaint because he could have saved the complaint from dismissal by "changing the way the Defendant is named . . . ," regardless of whether sovereign immunity barred the complaint.

We review a district court's order denying a motion for leave to amend for abuse of discretion, although we review *de novo* the underlying legal conclusion of whether a particular amendment to the complaint would be futile. *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1093-94 (11th Cir. 2017). Under the Federal Rules of Civil Procedure, a district court "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). But a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile, such as when the complaint as amended is still subject to dismissal. *Chang*, 845 F.3d at 1094.

---

[1] Nicholl's motion was a motion to vacate and for leave to amend. Because Nicholl only argues that denial of his request for leave to amend was error, the denial of the motion to vacate is not addressed. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To state a plausible claim for relief, a plaintiff must go beyond merely pleading the "sheer possibility" of unlawful activity by a defendant and so must offer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

The court did not err by denying the motion for leave to amend because Nicholl does not show that any proposed amendment would have avoided dismissal.  *See Chang*, 845 F.3d at 1094.  Even if Nicholl amended his complaint to name state officials under the *Ex Parte Young* exception and sought a prospective injunction, Nicholl would still need to show that there is more than the sheer possibility of ongoing constitutional violations by offering factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged, and Nicholl fails to do so.  *See Ashcroft*, 556 U.S. at 678; *Grizzle*, 634 F.3d at 1319.  Furthermore, Nicholl's contention that the complaint could be saved by being amended to an *in rem* or quiet title action against the money that was used to pay for the meal plan is without merit because Nicholl does not offer any proposed amendment that could state a plausible claim for relief on either of those bases.  Accordingly, we affirm.

14

**AFFIRMED.**